# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 14, 2011

No. 10-40515

Lyle W. Cayce
Clerk

DEL-RAY BATTERY COMPANY; GOLDEN EAGLE BATTERY, INC.,

Plaintiffs – Appellants

v.

DOUGLAS BATTERY COMPANY; INTERSTATE BATTERY SYSTEMS OF AMERICA, INC.,

Defendants – Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

KING, Circuit Judge:

Appellants, battery recyclers, were sued under the Texas Solid Waste Disposal Act (the "SWDA") in Texas state court for contribution to environmental clean-up costs incurred by Appellees. Appellants asserted in their defense that the Superfund Recycling Equity Act (the "SREA")—an amendment to the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") that exempts certain recyclers from liability for clean-up costs under CERCLA, and awards costs and fees to any recyclers improperly sued for contribution under CERCLA—applied to protect them from the state court action brought pursuant to the SWDA. After

No. 10-40515

Appellees non-suited the state court case, Appellants brought this federal court action requesting declaratory relief as to the SREA and seeking, under the SREA, the attorneys' and experts' fees they incurred in defending the state court action. They now appeal the district court's judgment dismissing their complaint. For the reasons stated below, we affirm.

## BACKGROUND

Appellants Del-Ray Battery Company and Golden Eagle Battery, Inc. (together, "Plaintiffs") and Appellees Douglas Battery Company and Interstate Battery Systems of America, Inc. (together, "Defendants") are battery recyclers that sold intact, spent lead acid batteries to a recycling facility in Tecula, Texas until the Environmental Protection Agency ("EPA") declared the facility a Superfund site and closed it down. The Texas Commission on Environmental Quality ("TCEQ"), the state's counterpart to the EPA, identified Defendants, among other battery recyclers, as potentially responsible parties and directed them to perform a remedial investigation/feasibility study at the Tecula site. The EPA ultimately paid $4 million in removal and remediation costs to clean up the site, but neither the EPA nor the TCEQ brought suit against any of the battery recyclers to recover the costs of this clean-up.

Defendants later sued Plaintiffs in state court under § 361.344(a) of the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ann. § 361 (Vernon 2010), seeking contribution for the costs they incurred to clean up the Tecula site.[1] Defendants did not raise any federal claims in that action. Plaintiffs asserted in their defense that the Superfund Recycling Equity Act, 42 U.S.C. § 9627 (2006)—an amendment to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* (2006), that exempts

---

[1] The parties contest whether Defendants actually paid part of these clean-up costs at the direction of the TCEQ, or whether they simply conducted the required investigation and study. However, it is not necessary for us to resolve that question here.

2

certain recyclers from CERCLA clean-up liability, and awards costs and fees to recyclers who are forced to defend against improper contribution actions—also exempted them from liability under the SWDA, and entitled them to recover the costs of defending the state court action.

The state court granted partial summary judgment for Defendants as to each element of cost recovery under § 361.344 of the SWDA, but did not order Plaintiffs to pay Defendants any damages on their claims for contribution. Defendants thereafter successfully moved to non-suit the case for reasons that are not explained in the record.

Plaintiffs then brought this federal court action asserting five separate claims: a claim under the SREA seeking recovery of their attorneys' and experts' fees incurred in defending the state court lawsuit, and four declaratory judgment claims requesting the district court to declare that (1) the SREA applies to Plaintiffs and protects them from all lawsuits for contribution, including the state court action brought by Defendants; (2) Plaintiffs are entitled to their attorneys' and experts' fees under the SREA; (3) the SREA "is unconstitutional if applied in a manner which precludes equal protection, due process [and] open courts to bonafide battery recyclers"; and (4) the state court's interpretation of the SREA was unconstitutional. Defendants moved to dismiss.

The district court dismissed the fourth declaratory judgment claim for lack of subject matter jurisdiction, reasoning that it lacked the power to review a state court decision under the *Rooker-Feldman* doctrine. The court dismissed the first and second declaratory judgment claims, as well as the claim for fees, for failure to state a claim because it found that the SREA does not exempt Plaintiffs from contribution actions under the SWDA. Finally, the court dismissed the third declaratory judgment claim regarding the constitutionality of the SREA for failure to state a claim because it could not discern a legal basis for that claim. This appeal followed.

No. 10-40515

## STANDARDS OF REVIEW

We review de novo a district court's grant of a motion to dismiss for lack of subject matter jurisdiction, applying the same standards as the district court. *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010) (citations omitted). Where, as here, the district court determined its jurisdiction based on the complaint alone, appellate review is "limited to determining whether the district court's application of the law is correct." *Id.* (citation and internal quotation marks omitted).

We also review de novo a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff fails to state a claim when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and internal quotation marks omitted).

## ANALYSIS

The heart of this federal action, as the district court identified, is Plaintiffs' claim that the SREA's exemption and cost shifting provisions apply to claims asserted under state law. As discussed below, the merits of this argument can be straightforwardly rejected: the plain language of the SREA makes clear that it applies to CERCLA actions only, and does not apply to state law actions. However, Defendants assert several new challenges to subject matter jurisdiction on appeal, which must be addressed before reaching the merits of the case. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 94 (1995) (requiring jurisdiction to be established as a threshold matter before reaching the merits); *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In*

4

No. 10-40515

*re TXNB Internal Case)*, 483 F.3d 292, 298 n.6 (5th Cir. 2007) (holding that federal subject matter jurisdiction may be challenged at any time on appeal).

## I.   Subject Matter Jurisdiction

### A.   Mootness

Defendants argue that Plaintiffs' first declaratory judgment claim—that the SREA applies to protect them from all contribution lawsuits, including the state court lawsuit brought by Defendants—is not justiciable insofar as it requests a specific declaration as to the non-suited state court lawsuit.  In other words, they argue that mootness divested the district court of jurisdiction over that particular portion of the claim.

The party asserting mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (citation and internal quotation marks omitted).  The non-suit order entered by the state court dismissed all parties' claims without prejudice. Without any information in the record or the briefs as to the reasons for the non-suit, or as to their future intent, Defendants have not carried their burden to show that the alleged harm will not recur, i.e., that they will not re-file their state law action. The claim thus withstands Defendants' challenge for mootness.

### B.   The *Rooker-Feldman* Doctrine

Defendants next argue that the *Rooker-Feldman* doctrine bars Plaintiffs from "relitigating their defenses in federal court." The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).   Thus, a losing party may not seek what amounts to appellate review of a final state court

No. 10-40515

judgment in a federal district court.  *See Lance v. Dennis*, 546 U.S. 459, 463 (2006).

    We have previously held that "the *Rooker-Feldman* bar generally should not extend to state decisions that would not be given preclusive effect under doctrines of res judicata and collateral estoppel."  *Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 210 (5th Cir. 2003); *see also Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460–61 (5th Cir. 2004).  The federal full faith and credit statute requires federal courts to give state court judgments the same preclusive effect that they would enjoy in the courts of the rendering state.  *See* 28 U.S.C. § 1738 (2006); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).  We therefore look to Texas law to determine whether the Texas judgments in this case would be accorded res judicata effect.

    A party seeking to assert res judicata in Texas courts must prove, inter alia, "a prior <u>final</u> determination on the merits by a court of competent jurisdiction."  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (emphasis added).  The partial summary judgment orders in this case were not final judgments.  They establish each of the elements necessary to state a claim under the SWDA, but stop short of concluding that Plaintiffs are liable for any contribution costs.  They do not award any damages to Defendants, who had sued to recover contribution to their clean-up costs, nor do they dispose of Plaintiffs' claim for fees under the SREA.  A judgment is not final when outstanding issues remain in the action.  *See In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829–31 (Tex. 2005); *McGowen v. Huang*, 120 S.W.3d 452, 461 (Tex. App.—Texarkana 2003, pet. denied) ("If a summary judgment does not mention nor refer to issues still pending, then those issues remain unadjudicated, and the summary judgment is not final.").  More specifically, a partial summary judgment on the issue of liability alone, without addressing the amount of damages, is not a final judgment.  *See* Tex. R. Civ. P.

No. 10-40515

166a(a) (describing such a judgment, which does not address the amount of damages, to be "interlocutory in character"). Finally, a non-suit does not convert a partial summary judgment into a final judgment on the merits when there are outstanding issues remaining in the action. *See McGowen*, 120 S.W.3d at 461–62 (citing *Chase Manhattan Bank, N.A. v. Lindsay*, 787 S.W.2d 51, 53 (Tex. 1990)).

Because the interlocutory summary judgment orders in this case would not enjoy res judicata effect, the *Rooker-Feldman* doctrine does not apply to bar their review. We nevertheless affirm the district court's dismissal of the fourth declaratory judgment claim (requesting the court to declare the state court's interpretation of the SREA to be unconstitutional) for lack of jurisdiction. As the Supreme Court has stated many times, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Plaintiffs have not asserted any basis for federal jurisdiction over their claim to declare a state court's interlocutory judgment to be unconstitutional, nor can we independently conceive of any grounds for jurisdiction to review such a claim. The claim was therefore properly dismissed for lack of subject matter jurisdiction.

## C.   Federal Question

Finally, Defendants argue that there is no federal jurisdiction over the remaining declaratory judgment claims in this case because the federal question that would give rise to jurisdiction is asserted in Plaintiffs' <u>defense</u> to a state law cause of action. This argument has merit as to the district court's original jurisdiction over the declaratory judgment claims. *See Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248 (1952) ("Where the complaint in an action

No. 10-40515

for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court."); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 329 (5th Cir. 2008).  However, Defendants fail to consider that the district court could have exercised supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a), which provides in part that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The district court had original jurisdiction over Plaintiffs' claim for attorneys' and experts' fees raised pursuant to the SREA, a federal statute.  And the declaratory judgment claims are so related to the SREA fees claim that they form part of the same case or controversy; indeed, the resolution of the declaratory judgment claims is entirely correlated with the resolution of the claim for fees, because they all turn on the same question: whether the SREA applies to the SWDA.

Nor did the district court's dismissal of the SREA fees claim divest it of supplemental jurisdiction over the declaratory judgment claims.  "[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to § 1367, over pendent state-law claims."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction" (emphasis added)).  Therefore, " 'the court's determination may be reviewed for abuse of discretion, but may not be raised at

any time as a jurisdictional defect.' " *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, — U.S. —, 129 S. Ct. 1862, 1866 (2009) (citation omitted).

We therefore conclude that the district court had jurisdiction over all of Plaintiffs' claims save the fourth declaratory judgment claim, which requested the district court to declare the state court's interpretation of the SREA to be unconstitutional. Having addressed the subject matter jurisdiction challenges raised by Defendants, we turn to the remainder of Plaintiffs' claims.

## II.  Failure to State a Claim

### A.  Constitutional Violations

Plaintiffs requested declaratory judgment on their claim that failure to apply the SREA exemption to claims under Texas law violates their constitutional rights to equal protection, due process, and open courts. However, Plaintiffs do not explain how these rights have been violated, nor do they state any legal basis for their complaints of constitutional violations. The district court therefore properly dismissed this claim because Plaintiffs have not pled sufficient facts to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

### B.  Preemption

Plaintiffs' remaining claims—the claim for fees under the SREA and the first two declaratory judgment claims—turn on whether the SREA exempts battery recyclers from liability under the SWDA. We hold that it does not.

#### 1.  *CERCLA, the SREA, and the SWDA*

CERCLA is the federal statute that governs cleanup of hazardous industrial waste and charges the costs of cleanup to those responsible for the contamination. *Burlington N. & Santa Fe Ry. Co. v. United States*, — U.S. —, 129 S. Ct. 1870, 1874 (2009). Two provisions of CERCLA—§§ 107(a) and 113(f)—allow private parties to recover expenses associated with cleaning up contaminated hazardous waste sites from other potentially responsible parties.

No. 10-40515

42 U.S.C. §§ 9607(a), 9613(f); *see United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007).

The SREA amended CERCLA by adding a limited exemption from liability under CERCLA for recyclers of hazardous materials, including battery recyclers, that meet certain standards. 42 U.S.C. § 9627(a)(1), (e). The SREA also allows recyclers sued in violation of the exemption to recover their attorneys' fees and experts' fees from the party that brought the improper action. *Id.* § 9627(j).

The SWDA is the Texas counterpart to CERCLA. *R.R. Street & Co. v. Pilgrim Enters., Inc.*, 166 S.W.3d 232, 238 (Tex. 2005). Like CERCLA, the SWDA contains a provision that permits private parties to bring contribution actions against other potentially responsible parties. *See id.* at 238. That provision states that "[a] person who conducts a removal or remedial action that is approved by the [TCEQ] and is necessary to address a release or threatened release may bring suit in a district court to recover the reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable." Tex. Health & Safety Code Ann. § 361.344(a). This is the provision under which Defendants sued Plaintiffs in Texas state court.

2.    *The SREA Does Not Apply to the SWDA*

The plain language of the SREA conclusively establishes that it applies only to claims asserted under CERCLA. Section 127(a) of the SREA provides that "a person who arranged for recycling of recyclable materials shall not be liable under sections 9607(a)(3) and 9607(a)(4) of this title [CERCLA] with respect to such material." 42 U.S.C. § 9627(a). Section 127(k) of the SREA—which is entitled "Relationship to liability under other laws"—states: "Nothing in this section shall affect . . . liability under any other Federal, State, or local statute or regulation promulgated pursuant to any such statute . . . ." *Id.* § 9627(k)(1). We conclude from this language that the SREA exempts battery

10

recyclers from liability under CERCLA, but does not affect liability under a state law like the SWDA.

Plaintiffs cite to the purpose of the SREA—to "promote the reuse and recycling of scrap material"—in support of their argument that Congress intended to protect battery recyclers like themselves, and therefore must have intended that the SREA apply to the SWDA. Pub. L. No. 106-113, Title VI, § 6001(a), 113 Stat. 1536, 1501A-598 (Nov. 29, 1999). However, as the Supreme Court stated in interpreting CERCLA: "Given the clear meaning of the text, there is no need . . . to consult the purpose of CERCLA at all. As we have said: '[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.' " *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167–68 (2004) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)) (second alteration original). Plaintiffs' argument therefore fails in the face of the plain language of the SREA.

Plaintiffs also assert that the SWDA itself recognizes that it is subject to the SREA. However, the Texas Supreme Court held in an analogous situation that an action brought exclusively under § 366.344(a) of the SWDA—the very provision under which Defendants sued Plaintiffs—was not subject to another liability-limiting provision that existed only in CERCLA. *R.R. Street*, 166 S.W.3d at 239–40 n.6. Similarly, there is no SREA equivalent in the SWDA that exempts battery recyclers from clean-up liability under the SWDA. Therefore, the defense contained in the SREA that may have been available to Plaintiffs, had they been sued under CERCLA, is not available to them in a suit brought pursuant to the SWDA.

3. *CERCLA Does Not Preempt the SWDA*

Plaintiffs are also incorrect in their argument that CERCLA itself preempts state law. Again, we look first and foremost to the text when interpreting a statutory provision. *United States v. Alvarez–Sanchez*, 511 U.S.

350, 356 (1994). CERCLA explicitly states in several different sections that it does not preempt state law. The general saving clause, § 152(d), provides in part:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.

42 U.S.C. § 9652(d). Section 107(j), the section of the Act that creates liability for clean-up costs, provides in pertinent part:

> Nothing in this paragraph shall affect or modify in any way the obligations or liability of any person under any other provision of State or Federal law, including common law, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action or the costs of removal or remedial action of such hazardous substance.

42 U.S.C. § 9607(j). The savings clause of CERCLA's express contribution provision, § 113(f)(1), states in relevant part:

> Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1). And finally, § 114(a), the section of CERCLA that deals with CERCLA's relationship to other laws, states:

> Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

42 U.S.C. § 9614(a). The statute is therefore clear on its face that Congress did not intend CERCLA to preempt state law.

It is also clear from case law that CERCLA and the SWDA co-exist as regulatory regimes. *See Cooper*, 543 U.S. at 166–67 (holding that the portion of § 113(f)(1) cited above "rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for

contribution available to a [potentially responsible party]"); *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 491 (5th Cir. 2002) ("This court and other courts have construed the CERCLA saving clauses in accordance with their plain meanings and have held that they preserve parties' rights arising under state law."). Because the SREA on its face does not apply to state law causes of action, and because CERCLA does not preempt the SWDA, the district court properly dismissed the remainder of Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.