**Opinion issued September 24, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00749-CV

————————————

**ANTHONY G. PETRELLO, Appellant**

**V.**

**MATTHEW W. PRUCKA, SHERYL S. PRUCKA,
RAHUL NATH, AND USHA NATH, Appellees**

———

**On Appeal from the 55th Judicial District
Harris County, Texas
Trial Court Case No. 2007-74969**

———

## O P I N I O N

This appeal arises from extensive litigation over Anthony Petrello's attempt to buy a house from his former next-door neighbor, Matthew Prucka. After a federal district court decided that his discrimination and conspiracy claims failed as

a matter of law, Petrello asserted other claims in state court related to the same real-estate transaction. The state trial court granted summary judgment against Petrello, holding that his claims were precluded by the final judgment in the federal case and that they failed to satisfy the statute of frauds.

Because Petrello's state-law claims arise from the same nucleus of operative facts that gave rise to his federal suit—the same real-estate transaction—the doctrine of res judicata bars him from relitigating his claims in state court. We affirm.

## Background

In 2007, Prucka, who lived on 8 Remington Lane in Houston, decided to sell his house. Petrello lived at 10 Remington Lane, and he contends that he sought to buy Prucka's house to provide his severely disabled daughter Carena a place to live with her caretakers. Petrello called Prucka and offered to pay $6.5 million for the house. Petrello alleges that Prucka declined the offer but orally granted him a right of first refusal with respect to future offers. Prucka contends that he agreed only to keep Petrello informed so that he could submit an equal or higher offer if he chose.

After declining Petrello's $6.5 million offer, Prucka listed the property for sale at the price of $8.3 million. Rahul Nath submitted a $7.6 million offer that included contingencies. Prucka declined Nath's offer and informed Petrello that a higher offer had been made. In response, Petrello increased his offer to $8.2

million. Because Petrello's offer was not subject to a brokerage fee, it would have netted Prucka more than an offer of the listed price from someone else. Prucka then called Nath, who agreed to pay the full listed price of $8.3 million. Despite the fact that the transaction included a fee for his broker, Prucka signed a written contract on December 5, 2007 to sell to Nath for that price. With no knowledge of Petrello's offer, Nath paid Prucka $75,000 in earnest money.

Two days after the contract was signed, Petrello contacted Nath. Petrello attempted to convince Nath not to go through with purchase or else to allow Petrello to buy the house from him. Nath refused. Four days later, Petrello sued Prucka in state court. He alleged various state-law claims for failing to give him the right of first refusal, including breach of contract and unjust enrichment. Petrello also filed a notice of lis pendens against 8 Remington Lane in the Harris County Clerk's office.

In light of Petrello's pending lawsuit, Prucka and Nath signed an agreement with respect to the litigation, including the contingency that Petrello might prevail. The sale of 8 Remington Lane closed on January 16, 2008. Eight days later, Nath intervened in Petrello's state-court suit.

Petrello had told Prucka that he intended to make major architectural modifications of 8 Remington Lane to accommodate his daughter, such as the installation of an elevator or an accessible bathroom. Prucka testified in a

3

deposition that neither he nor his wife wanted the house to be renovated in that way, preferring to sell to someone who would instead preserve its historic architectural integrity. After the deposition, Petrello amended his petition to allege discrimination claims under the Fair Housing Act, 42 U.S.C. §§ 3601–3619 (2006). Petrello alleged that Prucka did not want the house altered to accommodate Carena, that he accordingly refused to sell the house to him, and that Nath conspired with and assisted in the discrimination against Carena after closing the sale of the property. Petrello also asserted violations of state and municipal fair housing laws. Altogether, Petrello alleged 14 causes of action, including: (1) discrimination under the Federal Fair Housing Act, (2) discrimination under the Texas Fair Housing Act, (3) discrimination under the Houston Fair Housing Act, (4) civil conspiracy to discriminate, (5) aiding and abetting discrimination, (6) conspiracy to deprive him equal protection of laws under 42 U.S.C. §§ 1981–1988, (7) breach of oral contract to provide the right of first refusal, (8) breach of oral contract to sell the house, (9) estoppel, (10) constructive trust, (11) tortious interference with contract, (12) tortious interference with business relations, (13) breach of auction, and (14) a request for a declaratory judgment.

The case was removed to federal court. Once there, Petrello obtained an injunction that prevented Nath from making any improvements or major changes to the home pending the legal proceedings, which the Fifth Circuit vacated on

4

interlocutory appeal. *See Petrello v. Nath*, 350 Fed. App'x 887 (5th Cir. 2009). In its opinion, the Fifth Circuit suggested that the record raised "a serious question under 28 U.S.C. § 1367(a) whether federal supplemental jurisdiction over the plaintiff's state law claims is appropriate." *Id.* at 889 n.1. The court stated that it was "not clear" whether Petrello's state-law claims were so related to the federal-law claims as to form part of the same case or controversy, allowing for supplemental federal jurisdiction over the related claims. *Id.* Nevertheless, the Fifth Circuit also expressly acknowledged that it "need not examine federal jurisdiction over the state law claims" in the interlocutory appeal, and thus the court did not actually decide that issue. *Id.*

A lengthy discovery process ensued. Then, at a pretrial conference on the eve of trial, Petrello orally moved to nonsuit most of his claims against the defendants, leaving only claims related to violations of the federal, state, and municipal fair housing laws. The federal district judge specifically asked: "what are you going ahead on, what causes of action?" Petrello's attorney responded that the only remaining claims before that court were the "Fair Housing Act claims . . . state and federal." His attorney further stated that Petrello wished to avoid "any potential problem that might have been hinted by the Fifth Circuit about [the district court's] jurisdiction," explaining, "We don't want to try it in state court and it removes that issue." The defendants did not object to Petrello's motion for leave

to amend his complaint and to nonsuit his other claims, and the district court orally granted the motion. In his subsequent final pleading filed in federal court, his "Sixth Amended Complaint," Petrello listed only six causes of action: (1) a federal Fair Housing Act claim, (2) a Texas Fair Housing Act claim, (3) a Houston Fair Housing Act claim, (4) civil conspiracy to discriminate in housing sales, (5) aiding and abetting such discrimination, and (6) conspiracy to deprive the Petrellos the equal protection of the laws under 42 U.S.C. §§ 1981–1988.

At the time of trial Nath also had a live counterclaim before the federal district court. Nath requested a declaration under the Texas Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (West 2008), that (1) the Naths had title to 8 Remington Lane, (2) Petrello had no rights to the house, (3) Petrello's lis pendens was void and the title to the house was clear, and (4) the Naths were entitled to attorney's fees.

The case was tried to a jury which was unable to reach a verdict, and a mistrial was declared. After the mistrial, the original federal district judge recused himself, and the case was transferred to another judge. The federal district court then granted judgment as a matter of law in favor of the defendants. *See* FED. R. CIV. P. 50(a). Reasoning that the alleged oral agreement for the purchase and sale of the house was unenforceable under the statute of frauds, the court held that even after a trial Petrello had not established a prima facie case for a violation of the

6

federal Fair Housing Act, the Texas Fair Housing Act, or the Houston Fair Housing Ordinance. *Petrello v. Prucka*, No. H-08-1933, 2011 WL 305444 (S.D. Tex. Jan. 27, 2011); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973) (requiring discrimination claimants to meet the burden of proving that they qualify under anti-discrimination statutes); *see also* 42 U.S.C. § 3603(b)(1) (exempting the sale of housing without the services of brokers or any person in the business of selling houses from the Fair Housing Act). The judge signed a document titled "Final Judgment" which stated that "the plaintiffs shall take nothing by their federal, state and city discrimination and conspiracy claims." The Fifth Circuit later affirmed the district court's judgment. *Petrello v. Prucka*, 484 F. App'x 939 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1723 (2013).

The final judgment entered by the federal district court also stated: "State common law claims are remanded." Similarly, the memorandum opinion and order accompanying the final judgment stated in its conclusion that the "remaining state law claims and any counterclaims, including the Naths' claim to clear the title to their house, are remanded . . . pursuant to 28 U.S.C. § 1447(c)." Although the memorandum opinion and order made passing reference to Petrello's claims for breach of contract, tortious interference, aiding and abetting, and breach of auction, the court made no reference to the pretrial nonsuit of such claims, and it did not specifically analyze or otherwise address the continuing viability of those claims.

7

The next day, Nath moved in state district court to cancel the lis pendens on 8 Remington Lane. Less than a month later, Petrello filed a petition in state court. He alleged 14 causes of action, reasserting the housing discrimination claims the federal court had dismissed and the eight state common-law causes of action that he had nonsuited on the eve of the federal trial. In other words, although they were listed in a different order, Petrello's petition in state court listed the same 14 causes of action as had been alleged in his federal complaint before his move to nonsuit certain claims. The state common-law causes of action re-urged by Petrello included claims of breach of contract, estoppel, constructive trust, tortious interference with contract and business relations, and breach of auction.

The defendants filed a motion for summary judgment, and the trial court entered judgment against Petrello. Among other reasons, the trial court held that Petrello's claims were precluded because he had already litigated them in federal court, or he was required to litigate them there as they all arose from a common nucleus of operative facts. The court explained that the "remand" was not "an acknowledgement that some or any state court claims exist," but that it was intended to resolve the few remaining matters, such as the lis pendens. Subsequently, the defendants moved for sanctions, cancelation of the lis pendens, and the award of attorney's fees under the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). The trial court denied

8

sanctions, but it awarded attorney's fees under the Declaratory Judgment Act and canceled the lis pendens. Petrello then timely filed this appeal.

**Analysis**

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In our review, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex. 2005). When summary judgment is sought and granted on multiple grounds, we will affirm the judgment if any of the grounds on which it is based is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004); *Cadle Co. v. Bray*, 264 S.W.3d 205, 210 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Asserting that a claim is barred by res judicata is an affirmative defense. TEX. R. CIV. P. 94. Accordingly, Prucka and Nath bore the burden of establishing each of the elements of res judicata as a matter of law. *Garcia v. Shell Oil Co.*, 355 S.W.3d 768, 773 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

## I.    Res judicata

Federal law controls the determination of whether the federal district court's final judgment is res judicata as to the subsequent state-court proceeding. *Geary v. Tex. Commerce Bank*, 967 S.W.2d 836, 837 (Tex. 1998) (per curiam); *Garcia*, 355

S.W.3d at 774. Res judicata, or claim preclusion, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Res judicata applies when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.* When successive suits seek recovery for the same injury, "a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 564 (5th Cir. 1983) (citation omitted).

To determine whether two suits involve the same claim or cause of action, the Fifth Circuit applies the transactional test from the *Restatement (Second) of Judgments*. *Test Masters*, 428 F.3d at 571; *Garcia*, 355 S.W.3d at 774. "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Test Masters*, 428 F.3d at 571. "[T]he critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts."

10

*Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994) (quoting *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)).

The nucleus of operative facts in both Petrello's federal action and his subsequent state-court action are the same. His state-law claims, which include breach of contract and a request for a declaratory judgment that he is entitled to the property, arise from the same transaction—the sale of 8 Remington Lane—that gave rise to his fair housing claims. *See, e.g.*, *Thanedar v. Time Warner, Inc.*, 352 Fed. App'x 891, 895, 898 (5th Cir. 2009) (employee's termination comprised same core set of facts for both prior lawsuit's Title VII claims and later lawsuit's OSHA whistleblower and Sarbanes-Oxley retaliation claims); *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (Title VII discrimination claim, Title VII retaliation claim, state race-discrimination claim, workers' compensation retaliation claim, and state-law abuse-of-process claim all arose from the same nucleus of operative facts because they all arose from employee's termination); *Clifton v. Warnaco, Inc.*, 53 F.3d 1280 (Table), 1995 WL 295863, at *8 (5th Cir. Apr. 18, 1995) (prior suit involving breach of contract claims based on employee's termination barred later suit involving age and sex discrimination claims because those claims arose from the same termination).

In each suit, Petrello (1) alleged the same oral agreement existed between him and Prucka, (2) complained of Prucka's sale to Nath despite his higher net

11

offer, (3) complained of the same alleged interference by Nath in his purchase of the home, and (4) sought the same remedy of rescission of the house's sale. The language in the pleadings for both suits further demonstrates their similarity. *See Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 710 (5th Cir. 2005) (prior state court action barred federal action involving the same language in pleadings and same factual allegations that retired university employees were given increased workloads, discriminated against, and eventually not rehired). The state action is not based on a new or different factual scenario than the federal action. *See Test Masters*, 428 F.3d at 572 (holding a suit based on a new set of trademark infringement allegations was not barred by res judicata).

Accordingly, this suit and Petrello's prior suit arise from same nucleus of operative facts and thus constitute the same cause of action for purposes of claim preclusion. *See Agrilectric Power*, 20 F.3d at 665. Petrello does not challenge that the same parties and cause of action were involved in the prior federal case as in this case. But he disputes whether two other elements of res judicata apply: that the prior action was concluded by a final judgment on the merits and that a court of competent jurisdiction rendered the prior judgment.

## A.    Finality

Petrello disputes the finality of the prior federal judgment because it did not dispose of all of his claims—specifically, his state-law claims that he had

nonsuited before the federal trial. He relies upon *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725 (5th Cir. 2011), to support his argument that a judgment lacks finality "when outstanding issues remain." *Id.* at 730. Unlike the judgment in *Del-Ray Battery*, however, the federal final judgment in this case left no issues outstanding with respect to Petrello's claims. *See id.* (holding that interlocutory summary judgment order addressing only some outstanding issues was not final judgment). Petrello had nonsuited his state common-law and declaratory-judgment claims on the eve of a trial on claims of discrimination and conspiracy in connection with Prucka's sale of the house to Nath. Accordingly, the state-law claims were in no sense outstanding or remaining at the time the federal district court's final judgment. *Cf.* FED. R. CIV. P. 41(b) (providing that generally any dismissal "except one for lack of jurisdiction, improper venue, or failure to join a party . . . operates as an adjudication on the merits"). Petrello chose not to pursue them.

Petrello's voluntary dismissal of certain claims does not undermine the finality of the federal judgment and its preclusive effect. Even when a court grants a nonsuit without prejudice, res judicata precludes such claims from being asserted later if they "*could have been* advanced in support of the cause of action on the occasion of its former adjudication." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 314 (5th Cir. 2004) (quoting *Nilsen*, 701 F.2d at 560). When later-asserted

13

claims arise from the same nucleus of operative facts as prior claims, such claims not only could have been brought but should have been brought in the first action to create a single, convenient trial unit. *Id.* at 313–14. Res judicata bars such claims that a party failed to pursue, even if the court granted a nonsuit without prejudice regarding them. *See, e.g., Howe*, 913 F.2d at 1147 n.30 (holding that res judicata barred suit although original proceedings were dismissed without prejudice when the plaintiffs had opportunity to bring claims in original suit).[1]

---

[1] Our conclusion that Petrello's claims arise from a common nucleus of operative facts implies that all of the claims could have been pursued together in the federal trial pursuant to the federal court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65, 118 S. Ct. 523, 529 (1997) ("the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."'" (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966)). Our conclusion in this regard does not suggest that Petrello was required to defy a prior ruling of the Fifth Circuit. *See Petrello v. Nath*, 350 Fed. Appx. 887, 889 n.1 (5th Cir. 2009) ("our review of the record raises a serious question under 28 U.S.C. § 1367(a) whether federal supplemental jurisdiction over the plaintiff's state law claims is appropriate"). Despite the Fifth Circuit's dictum questioning the exercise of supplemental jurisdiction over these claims, the federal district court did not react by striking those claims from the case, as it was surely obligated to do if it found its own jurisdiction lacking. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523

14

Petrello does not offer a plausible interpretation of the federal district court's order that the state-law claims it "remanded" specifically referred to any of Petrello's own claims. When the federal district court dismissed the claims related to housing discrimination and conspiracy, Petrello had no remaining claims. Petrello's other claims had all been dismissed after he moved to nonsuit them. Thus, the only claims "remaining" in the action were Nath's state-law claims under the Texas Declaratory Judgment Act. These were a request for a declaration that he possessed fee simple title to the house, that the lis pendens was void, and that he was entitled to attorney's fees.

The fact that the district court remanded the remaining state-law claims does not affect the finality of the federal court's judgment. A judgment containing a remand order is final as to those aspects of the judgment "distinct and separable from the remand proper." *Morris v. T E Marine Corp.*, 344 F.3d 439, 445 (5th Cir.

U.S. 83, 95, 118 S. Ct. 1003, 1013 (1998). Had the Fifth Circuit actually ruled there was no supplemental jurisdiction, or if the federal district court had actually declined to exercise its supplemental jurisdiction, *see* 28 U.S.C. § 1367(c), then we would be faced with a different scenario in which it could not be concluded that the state-law claims could have been brought in the first action. *Cf. In re Haynes & Boone, LLP*, 376 S.W.3d 839, 847 (Tex. App.—Houston [1st Dist.] 2012) (orig. proceeding) (noting the undesirability of circumstances amounting to "jurisdictional ping-pong" due to their tendency to "undermine public confidence in our judiciary" and "squander private and public resources" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818–19, 108 S. Ct. 2166, 2179 (1988)). But the federal courts never so ruled. Had Petrello intended to preserve the right to assert these claims, he could have sought and obtained a jurisdictional ruling in the federal court. Instead, he voluntarily dismissed the claims.

15

2003) (quoting *First Nat'l Bank v. Genina Marine Servs., Inc.*, 136 F.3d 391, 394 (5th Cir. 1998)).  Here, the resolution of Petrello's claims regarding the sale of the house was distinct from the remanded state-law claims, such as Nath's claim seeking to cancel the lis pendens.  Accordingly, we conclude that the federal district court's judgment was final in the relevant sense, that is, with respect to all of Petrello's claims relating to and arising from the sale of the Prucka house.

Petrello's own treatment of the federal district court's judgment also supports this conclusion that the judgment is final.  Petrello did not question its finality when he appealed the judgment to the Fifth Circuit, which generally can only hear appeals from final judgments.  *See John G. & Marie Stella Kennedy Mem'l Found. v. Mauro*, 21 F.3d 667, 670 (5th Cir. 1994) (upholding jurisdiction to review judgment dismissing plaintiff's federal claims although the district court remanded parts of the case to state court); RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. g ("[T]hat the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.").  Finality for purposes of res judicata is generally the same as finality for purposes of appellate review.  RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. b.  Further, in his briefing and correspondence

16

with the trial court, Petrello explicitly acknowledged that the district court rendered final judgment on the merits.

## B.      Competent jurisdiction

Petrello also argues that the prior judgment was not rendered by a court of competent jurisdiction because the district court purportedly declined to exercise its supplemental jurisdiction over his state-law claims when it "remanded" them. This argument is inconsistent with Petrello's voluntary dismissal of such claims prior to the federal trial, and Petrello gives no reason why that nonsuit should be considered ineffective.  Because the voluntarily dismissed claims were not part of the federal case at the time of the federal judgment, they could not have been remanded upon the dismissal of Petrello's "discrimination and conspiracy claims."

In the alternative, Petrello contends that the federal court used the "remand" language to decline to exercise supplemental jurisdiction over the "state common law claims." As we conclude that federal district court was not specifically referencing Petrello's claims, it necessarily could not have specifically declined to exercise jurisdiction over the claims and thereby preserve them against the res judicata bar.  *See Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 712 (5th Cir. 2005) ("Absent an *express* reservation, res judicata applies to bar a second suit.").

Thus, res judicata bars Petrello's state suit, as the trial court correctly concluded.

## II.   Attorneys' fees

Petrello also challenges the trial court's award of attorney's fees to the defendants.  The trial court awarded Prucka $152,000 in fees and $30,000 in costs, and it awarded Nath $73,000 in fees and $27,000 in costs.  The court awarded contingent attorney's fees in the amount of $50,000 for appeal to the court of appeals and $25,000 for appeal to the Supreme Court of Texas.   Petrello argues that the trial court erred by awarding attorney's fees based on a post-judgment motion supported by affidavits, rather than requiring evidence to be presented at a pre-judgment hearing.   Additionally, he argues that the attorney's fees awarded were not properly segregated and included $40,000 in unrecoverable costs.

### A.   Proof by affidavit

We review a trial court's award of attorney's fees under the Declaratory Judgments Act for an abuse of discretion.  *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 733 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).  "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law." *Id.*  When a movant includes a prayer for attorney's fees in its summary-judgment motion, an attached affidavit is testimony that may be considered as proof of the attorney's fees incurred. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *see Gaughan v. Nat'l*

18

*Cutting Horse Ass'n*, 351 S.W.3d 408, 423 (Tex. App.—Fort Worth 2011, pet. denied). To create a fact issue, the nonmovant must file a counter-affidavit contesting the reasonableness of the movant's attorney's fee claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b) (West 2008). Unless a controverting affidavit is filed, an affidavit as to the amount of attorney's fees is presumed reasonable. *Id.*; *Hunsucker v. Fustok*, 238 S.W.3d 421, 432 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The party intending to controvert a claim in the attorney's fees affidavit must file a counter-affidavit no later than 30 days after receipt of the affidavit. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(e).

In this case, the defendants included a prayer for attorney's fees in their summary-judgment motion, and they submitted affidavits supporting the award. Petrello did not file a counter-affidavit challenging these fees as unreasonable. Instead, he argues that the issue of the reasonableness and necessity of Declaratory Judgment Act attorney's fees must be submitted to the jury, relying upon *Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998), and *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552 (Tex. App.—Eastland 2010, pet. denied). Petrello's cases do not stand for the proposition he advances.[2] While attorney's fees are an issue for the

---

[2] In *Bocquet*, the Supreme Court noted that the issue of whether attorney's fees are reasonable is "generally" a "question of fact for the jury's determination." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). But when the trial court decides a case as a matter of law, as here, a party's uncontroverted affidavits establish the reasonable amount of attorney's fees

jury in cases in which the jury is the factfinder, *Bocquet*, 972 S.W.2d at 21, an affidavit can establish the reasonableness of attorney's fees for summary judgment purposes. *Gaughan*, 351 S.W.3d at 423. When no controverting affidavit is filed, mere criticism of the amount of attorney's fees sought does not create a fact issue and the trial court may grant summary judgment on the amount of attorney's fees. *Id.* at 423–24; *Merch. Ctr., Inc. v. WNS, Inc.*, 85 S.W.3d 389, 397 (Tex. App.—Texarkana 2002, no pet.); *see also Hunsucker*, 238 S.W.3d at 432 (holding it is an abuse of discretion not to award fees when party submitted uncontroverted affidavit establishing reasonableness of fees).

## B.    Segregation of fees

Petrello next argues that the trial court erred by awarding attorney's fees that had not been segregated. The question of the need to segregate fees is a question of law, which we review de novo. *Tony Gullo Motors, Inc. v. Chapa*, 212 S.W.3d

---

as a matter of law as well. *Hunsucker v. Fustok*, 238 S.W.3d 421, 432 (Tex. App.—Houston [1st Dist.] 2007, no pet.). And unlike the scenario in *Fuqua*, Petrello raised no fact question on the issue of the reasonableness of attorney's fees. *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 559–60 (Tex. App.—Eastland 2010, pet. denied). There, the party requesting fees asked the trial court to determine the issue over the objection of the opposing party, which requested a jury trial on the issue. *Id.* at 560. Petrello never raised a fact question because he failed to comply with the provision of TEX. CIV. PRAC. & REM. CODE ANN. § 18.001 requiring a controverting affidavit to contest the issue. *See Merch. Ctr., Inc. v. WNS, Inc.*, 85 S.W.3d 389, 397 (Tex. App.—Texarkana 2002, no pet.) (holding reasonableness of attorney's fees under Declaratory Judgment Act is fact question, but clear, direct, and uncontroverted evidence of fees is taken as true as matter of law when opposing party has not rebutted such evidence).

299, 312–13 (Tex. 2006). Parties seeking attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not." *Id.* at 311. But when legal services advancing both recoverable and unrecoverable claims are intertwined, legal services need not be segregated. *Id.* A claim is not disallowed because it does "double service," but a claimant must segregate fees if any attorney's fees relate solely to a claim for which fees are unrecoverable. *Id.* at 313. The party seeking to recover attorney's fees carries the burden of demonstrating that fee segregation is not required. *CA Partners v. Spears*, 274 S.W.3d 51, 82 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "[T]he evidence of the amount of recoverable attorney's fees is sufficiently segregated if, for example, the attorney testifies that a given percentage of the drafting time would have been necessary even if the claim for which attorney's fees are not recoverable had not been asserted." *Id.*

The trial court granted summary judgment on the bases of preclusion of claims and the statute of frauds—defenses that would equally defeat Petrello's Declaratory Judgment Act claims and his various state-law claims for which attorney's fees are unrecoverable. When the services necessary to defend a claim for which fees are available also advance an argument against a claim for which fees are not recoverable, "then the exception to the general fee-segregation rule

21

applies, and the amount of time or money that was reasonable to expend in performing the service need not be segregated among the claims it advanced." *In re Lesikar*, 285 S.W.3d 577, 585 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding); *see also Bencor, Inc. v. Variable Annuity Life Ins. Co.*, No. 01-09-00094-CV, 2011 WL 1330818, at *9 (Tex. App.—Houston [1st Dist.] Apr. 7, 2011, pet. denied) (mem. op.) (holding prevailing party could recover declaratory judgment attorney's fees "when it raised the defense of res judicata as to both the breach of contract claim and the claim for declaratory relief"). In support of their request for fees, the defendants presented affidavits from their attorneys and supporting documents to the trial court supporting the conclusion that the fees were reasonable and intertwined with the defense of Petrello's Declaratory Judgment Act claims. Accordingly, we conclude that the trial court did not abuse its discretion in its attorney's fees award.

## C.    Unrecoverable costs

Finally, Petrello contests the trial court's award of "almost $40,000 in unrecoverable costs" to the Prucka and Nath. He contends that the costs were not recoverable because Texas law does not generally permit the recovery of litigation expenses, such as photocopies and exhibit preparation, as "costs." *See, e.g.,* Tex. R. Civ. P. 140 ("No fee for a copy of a paper not required by law or these rules to be copied shall be taxed in the bill of costs.").

22

The manner of assessing costs is left largely to the trial court's discretion. *Shaikh v. Aerovias de Mexico*, 127 S.W.3d 76, 82 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "Costs" usually refers to "fees and charges required by law" to be paid to the courts or some of their officers, and the amount is fixed by statute or the court's rules. *Id.* Generally, expenses incurred in prosecuting or defending a lawsuit are not recoverable as costs, unless permitted by a statute or rule. *Sterling Bank v. Willard M, L.L.C.*, 221 S.W.3d 121, 125 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Whether a particular expense is permitted by statute or rule to be recoverable as a cost is a question of law, which we review de novo. *Ferry v. Sackett*, 204 S.W.3d 911, 912 (Tex. App.—Dallas 2006, no pet.).

Here, the Declaratory Judgment Act grants discretion to the trial court to "award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008); *see also Bocquet*, 972 S.W.2d at 21 (holding section 37.009 entrusts awards to sound discretion of trial court). When the Declaratory Judgment Act provides for the recovery of costs, other rules limiting the award of costs, such as the Texas Rules of Civil Procedure, do not control. *W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 270 (Tex. App.—Austin 2002, no pet.); *see also Bocquet*, 972 S.W.2d at 21 (limitations on trial court's discretion to make awards under section 37.009 found in statute's language). The general rule relied upon by Petrello that litigation

expenses cannot be assessed as costs stems from the Texas Rules of Civil Procedure. *See, e.g., Shaikh*, 127 S.W.3d at 82. No such limitation is found in the Declaratory Judgment Act, which instead allows the court to award both costs and attorney's fees so long as the award is equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Martin v. Cadle Co.*, 133 S.W.3d 897, 906–07 (Tex. App.—Dallas 2004, pet. denied).

Petrello does not argue that the award of costs connected to defending his lawsuit was either inequitable or unfair. Therefore, we overrule this issue. *See Martin*, 133 S.W.3d at 907 (overruling appellant's challenge to section 37.009 award when he does not argue award inequitable or unjust); *W. Beach Marina*, 94 S.W.3d at 270 (same).

## Conclusion

As the trial court's grant of summary judgment on the ground of res judicata was meritorious, we need not address Petrello's other issues to affirm the judgment. *Two Thirty Nine Joint Venture*, 145 S.W.3d at 157. We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.