ACCEPTED
01-15-00604-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/4/2015 3:31:39 PM
CHRISTOPHER PRINE
CLERK

CAUSE NO. 01-15-00604-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/4/2015 3:31:39 PM
CHRISTOPHER A. PRINE
Clerk

**D & R CONSTRUCTORS, *et al*,**
*Appellants,*

*vs.*

**TEXAS GULF ENERGY, INC., *et al*,**
*Appellees.*

Appeal from the 270th District Court of Harris County, Texas
Trial Court Cause No. 2013-00543 - Hon. Brent Gamble, Presiding

**APPELLEES' BRIEF FOR
TEXAS GULF ENERGY, INC, CS BANKERS V, LLC
AND TIMOTHY CONNOLLY**

**CHRISTIAN, SMITH & JEWELL, LLP**

Gary M. Jewell
State Bar No. 10664800
*gjewell@csj-law.com*
Adam L. Tepper
State Bar No. 24079445
*atepper@csj-law.com*
2302 Fannin, Suite 500
Houston, Texas 77002

*Counsel for Appellees Texas Gulf Energy, Inc.,
CS Bankers V, LLC and Timothy Connolly*

*Oral Argument Conditionally Requested*                    *November 4, 2015*

# IDENTITY OF PARTIES AND COUNSEL

***Appellants***:

Michael Rushing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . George W. Gore
Stephanie Rushing                              The Gore Law Firm, P.C.
Penn Rushing                                      6200 Savoy, Suite 1150
Florence Rushing                                  Houston, Texas 77036
D&R Constructors, Inc.                                (713) 224-2000
George W. Gore[1]

***Appellees***:

Texas Gulf Energy, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . Gary M. Jewell
CS Bankers V, LLC                                      Adam L. Tepper
Timothy Connolly                          Christian, Smith & Jewell, LLP
                                              2302 Fannin, Suite 500
                                              Houston, Texas 77002
                                                   (713) 659-7617

Texas Gulf Fabricators, LLC. . . . . . . . . . . . . . . . . . . . . . . Paul Dobrowski
Brian Hendry                                          Cody Stafford
Lester Smith                          Dobrowski, Larkin & Johnson, LLP
                                          4601 Washington Ave, Suite 300
                                               Houston Texas 77007
                                                   (713) 659-2900

***Trial Court:***

Hon. Brent Gamble. . . . . . . . . . . . . . . . . . . . . . . . . . . . 270th District Court
                                         Harris County Civil Courthouse
                                            201 Caroline, 13th Floor
                                              Houston, Texas 77002
                                                   (713) 368-6400

---

[1]    Although not a party to the underlying litigation, Gore has inserted himself as an
appellant due to the fact that monetary sanctions were awarded joint and severally
against him and his clients for the frivolous action against Appellee Lester Smith.

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL**. . . . . . . . . . . . . . . . . . . . . . . . i

**TABLE OF CONTENTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**INDEX OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**RECORD REFERENCES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

**STATEMENT OF THE CASE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

**STATEMENT REGARDING APPELLANTS' BRIEF**. . . . . . . . . . . . . . x

**ISSUE PRESENTED FOR REVIEW**. . . . . . . . . . . . . . . . . . . . . . . . . xi

**STATEMENT REGARDING ORAL ARGUMENTS**. . . . . . . . . . . . . xii

**STATEMENT OF FACTS & PROCEDURAL HISTORY**. . . . . . . . . . 1

**SUMMARY OF THE ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . 6

**STANDARD OF REVIEW**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**ARGUMENT AND AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . 8

    ***1. Reply Point 1*.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        *In Response to Point of Error 1 and 2: The foreclosure complied with the Texas Property Code and the terms of the operative Deed of Trust.*

    ***2. Reply Point 2*.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        *In Response to Points of Error 3 and 5: The letter of intent is not an enforceable contract.*

**2. *Reply Point 3*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In Response to Points of Error 3 and 5: In response to the no-evidence motions for summary judgment, the appellants failed to bring forth credible evidence to support each element of their causes of action.*

**2. *Reply Point 4*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In Response to Point of Error 4: The appellants were provided adequate time to conduct discovery and failed to show that additional discovery would be material.*

**2. *Reply Point 5*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

In Response to Point of Error 7: An award of attorney's fees by a trial judge in a declaratory judgment action following summary judgment is proper.

**CONCLUSION AND RELIEF REQUESTED** . . . . . . . . . . . . . . . . . . . 45

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . 46

# INDEX OF AUTHORITIES

***Cases***

*A.G. Edwards & Sons, Inc. v. Breyer,*
    235 S.W.3d 704 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Adebo v. Litton Loan Serv., L.P.,*
    No. 01-07-00708-CV, 2008 WL 209703
    (Tex. App.—Houston [1ˢᵗ Dist.] May 29, 2008, no pet.). . . . . . . . . . . . 10

*Allied Vista, Inc. v. Holt,*
    987 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). 33

*Arthur Andersen & Co. v. Perry Equip. Corp.,*
    945 S.W.2d 812 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Bocquet v. Herring,*
    972 S.W.2d 19 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Boeker v. Syptak,*
    916 S.W.2d 59, 61 (Tex.App.–Houston [1ˢᵗ Dist.] 1996, no writ). . . . . . 25

*Citrin Holdings, LLC v. Minnis,*
    No. 14-11-00644-CV, 2013 WL 1928652
    (Tex. App.—Houston [14th Dist] May 9, 2013, no pet.). . . . . . . . . . . . 22

*City of Houston v. Howard,*
    786 S.W.2d 391 (Tex. App.—Houston [14th Dist.] 1990, writ denied). 34

*Charter Nat. Bank-Houston v. Stevens,*
    781 S.W.2d 368 (Tex. App.—Houston [14ᵗʰ Dist.] 1989, writ denied). . . 8

*Chessher v. Sw. Bell. Tel. Co.,*
    658 S.W.2d 563 (Tex. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Coble v. Adams*,
No. 01-13-00562-CV,
2014 WL 6602480, 2-3 (Tex.App. Houston [1st Dist.] 2014). . . . . . . . 24

*Coffey v. Johnson*,
142 S.W.3d 414 (Tex. App.—Eastland 2004, no pet.).. . . . . . . . . . . . 35

*Dubose v. Worker's Med., P.A.*,
117 S.W.3d 916 (Tex. App.—Houston [14th Dist.] 2003, no pet.). . . . . 32

*Elder v. Bro*,
809 S.W.2d 799 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*English v. Fischer*,
660 S.W.2d 521 (Tex. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*FM Props. Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fiduciary Fin. Servs. Sw., Inc. v. Corilant Fin., L.P.*,
376 S.W.3d 253 (Tex. App.—Dallas 2012, pet. denied).. . . . . . . . . . . 23

*Figueroa v. Davis*,
318 S.W.3d 53 (Tex. App.—Houston[1st Dist.] 2010, no pet.). . . . . . . 37

*Fuqua v. Oncor Elec. Delivery Co.*,
315 S.W.3d 552 (Tex. App.—Eastland 2010, pet. denied).. . . . . . . . . 39

*Gaughan v. Nat'l Cutting Horse Ass'n*,
351 S.W.3d 408 (Tex. App.—Fort Worth 2011, pet. denied). . . . . . 38, 42

*Goodyear Tire & Rubber Co. v. Mayes*,
236 S.W.3d 754 (Tex. 2007) (per curiam). . . . . . . . . . . . . . . . . . . . . 8

*Guthrie v. Suiter*,
934 S.W.2d 820, 826 (Tex.App.–Houston [1st Dist.] 1996, no writ). . 25

*Haden v. David J. Sacks, P.C.,*
    332 S.W.3d 503 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). . 40

*Henry S. Miller Mgmt. Corp. v. Houston State Assocs.*
    792 S.W.2d 128, 134 (Tex.App.–Houston [1st. Dist.] 1990, writ denied)xi

*Intertex, Inc. v. Cowden,*
    728 S.W.2d 813 (Tex. App.—Houston [1st District] 1986, no writ.). . . . . 41

*Kainer v. ABMC Corp.,*
    No. 01-05-00338-CV,
    2006 WL 407794 (Tex. App.—Houston [1st Dist.] 2006, no pet.). . . . . . 11

*Lampasas v. Spring Center, Inc.,*
    988 S.W.2d 428 (Tex. App.—Houston [14th Dist.] 1999, no pet.).. . . . 32

*Lentino v. Cullen Ctr. Bank & Trust*
    No 14-00-00692-CV,
    2002 WL 220421 (Tex. App.–Houston [14th Dist.] 2002, pet. denied).. xi

*Lundy v. Masson,*
    260 S.W.3d 482 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). 33

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,*
    289 S.W.3d 844 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Marquis Acquisitions, Inc. v. Steadfast, Ins.,*
    409 S.W.3d 808, 813 (Tex.App.–Dallas 2013, no pet.). . . . . . . . . . . . . 30

*M.D. Anderson Hosp. & Tumor Inst. v. Willrich,*
    28 S.W.3d 22 (Tex. 2000) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . 8

*Oake v. Collin Co.,*
    692 S.W.2d 454 (Tex. 1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Onwuteaka v. Cohen*
    846 S.W.2d 889, 893 (Tex.App.–Houston [1st Dist.] 1993, write den.). 11

*Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.,*
821 S.W.2d 283 (Tex. App.—Houston [1st Dist.] 1991, writ denied). . . 38

*Petrello v. Prucka,*
415 S.W.3d 420 (Tex. App.—Houston [1st Dist.] 2013, no pet.). 39, 40, 41

*Provident Life & Accident Ins. Co. v. Knott,*
128 S.W.3d 211 (Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Rodarte v. Investco Grp., L.L.C.,*
299 S.W.3d 400 (Tex. App.—Houston [14th Dist.] 2009, no pet.). . . . 10

*Rogers v. Ricane Enters., Inc.,*
772 S.W.2d 76 (Tex. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Science Spectrum, Inc. v. Martinez,*
941 S.W.2d 910 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Smith v. Heard,*
980 S.W.2d 693 (Tex. App.—San Antonio 1998, pet. denied). . . . . . . . 32

*Stoner v. Thompson,*
578 S.W.2d 679 (Tex. 1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Specialty Retailers, Inc. v. Fuqua,*
29 S.W.3d 140, 145 (Tex.App.–Houston [14th Dist.] 2000, pet. den.). 35

*Tony Gullo Motors I, LP v. Chapa,*
212 S.W.3d 299 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Triad Home Renovators v. Dickey,*
15 S.W.3d 142, 145 (Tex.App.–Houston [14th Dist.] 2000, no pet.).. . . 35

*Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,*
787 S.W.2d 942 (Tex. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Wal-Mart Stores, Inc. v. Lopez,*
93 S.W.3d 548 (Tex. App—Houston [14th Dist.] 2002, no pet.). . . . 18, 21

**Statutes**

Tex. Civ. Prac. & Rem. Code § 18.001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

Tex. Civ. Prac. & Rem. Code § 37.009 .. . . . . . . . . . . . . . . . . . . . . . . . . .  41, 42

Tex. Prop. Code Ann. § 51.002. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 13

**Rules**

Tex. R. App. P. 9.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Tex. R. App. P. 38.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Tex. R. App. P. 39.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xii

Tex. R. Civ. P. 45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

Tex. R. Civ. P. 166a(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# RECORD REFERENCES

This brief uses the following format for citation to the Record:

1 CR _____    Clerk's Record (Vol. 1)

2 CR _____    Clerk's Record (Vol. 2)

# STATEMENT OF THE CASE

*Nature of the case:* This case arises from the foreclosure on a debt owed by D&R, secured by real property in Baytown, Texas. CS Bankers foreclosed on the debt, acquired the real property, and later transferred the property to TGF. Despite agreeing to the terms of the transaction, D&R and the Rushings want that property back.

*Course of proceedings:* Ultimately TGE and CS Bankers sought declaratory relief against the Rushings and D&R relative to the foreclosure of the subject property and the enforceability of a letter of intent. In addition to their competing declaratory action on the foreclosure, the Rushings and D&R pursued a myriad of claims against not only TGE and CS Bankers, but also third-party defendants Connolly, TGF, Hendry, and Smith.

*Disposition below:* The entire matter was disposed by motion practice when the trial court—over an eight month briefing process—granted multiple summary judgments in favor of the appellees.

## STATEMENT REGARDING APPELLANTS' BRIEF

These appellees, TGE, CS Bankers and Connolly, have attempted to provide a concise brief in response to a wholly inadequate appellant brief. Here, the appellants essentially invite this Court to perform a tedious and time consuming review of the record and then determine whether they preserved error and, if so, was the error reversible.

In sum, the appellants' brief does not comply with Rule 38.1 of the Texas Rules of Appellate Procedure.[2]   An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.  Tex. R. App. P. 38.1.

To start, the appellants' "Statement of the Case" and "Statement of Facts" combine to over eight pages of misconstrued argument that does not contain a single proper citation to the record.  Further, a few points of error—such as the appellants' points of error 3, 4 and 7—do not properly cite to the correct record or appropriate legal authority.  Simply inviting this Court to "see all summary judgment motions" and "see affidavits" is an invitation this Court should decline.  *See* Appellants at 23 and 27.

---

[2]    Among other defects, the appellants' "Statement of Case" violates Rule 38.1(d) of the Texas Rules of Appellate Procedure.  In addition, although a minor point, the appellants failed to include a certificate of compliance pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure.

As such, these appellees respectfully request that this Court follow the guidance it set forth in *Henry S. Miller Mgmt. Corp. v. Houston State Assocs.* and that of the Fourteenth Court of Appeals' in *Lentino v. Cullen Ctr. Bank & Trust. See Henry S. Miller Mgmt. Corp. v. Houston State Assocs.*, 792 S.W.2d 128, 134 (Tex. App.—Houston [1ˢᵗ Dist.] 1990, writ denied) and *Lentino v. Cullen Ctr. Bank & Trust*, No. 14-00-00692-CV, 2002 WL 220421 (Tex. App.—Houston [14th Dist.] Feb. 14, 2002, pet. denied).

## REPLY ISSUES PRESENTED FOR REVIEW

1. The foreclosure complied with the Texas Property Code and the terms of the operative Deed of Trust.

2. The letter of intent is not an enforceable contract.

3. In response to the no-evidence motions for summary judgment, the appellants failed to bring forth credible evidence to support each element of their causes of action.

4. The appellants were provided adequate time to conduct discovery and failed to show that additional discovery would be material.

5. An award of attorney's fees by a trial judge in a declaratory judgment action following summary judgment is proper.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 39 of the Texas Rules of Appellate Procedure, the appellants do not have a *right* to oral argument. As a result of the defective nature of the appellants' briefing, their entire appeal could be considered frivolous. Considering, the briefing presented and argued before the trial court, the dispositive issues have already been "authoritatively decided" by an experienced jurist that devoted a substantial amount of the trial court's energy and time unwinding the tangled pleadings and motion practice of the appellants. Tex.R.App.P. 39.

Here, the facts and legal arguments were adequately briefed at the trial court level and are now a part of this Court's record. As the trial court disposed of this entire case pursuant to an exhaustive motion practice, this Court's decisional process would not be significantly aided by oral argument. Tex.R.App.P. 39.

The only possible reason for oral argument would be to provide the appellants a generous gift—specifically, a chance to "clarify the written arguments" in their brief. If this Court permits oral argument, these appellees respectfully request an opportunity to be heard.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the Summer of 2012, D&R Constructors, Inc. ("D&R") had fallen on hard times, owed the IRS approximately $600,000 in back taxes[3] and was looking for a way out of its obligations at the fabrication facility located at 6314 Wade Road, Baytown, Texas (the "Property"), including the promissory note it owed Comerica Bank (the "Note"). After it was introduced to Comerica Bank by D&R, CS Bankers V, LLC ("CS Bankers") purchased the Note that was secured by the Property.[4] 1 CR 391–438. CS Bankers subsequently foreclosed on the Property in September of 2012. 1 CR 439–440; 449–450.

Additionally, at or about the time CS Bankers acquired the Note from Comerica Bank, Texas Gulf Energy, Inc. ("TGE") and members of the Rushing family (some of which owned shares in D&R) entered into a non-binding term sheet outlining the basic framework of a to-be-formed, future "marketing joint venture to develop new fabrication and manufacturing business for a startup company, Texas Gulf Fabrication, Inc."[5] 2 CR 1079–1080. The parties agreed

---

[3]    Penn Rushing was also personally liable to the IRS for this debt. 2 CR 1145-1146 (pg. 24: ln. 25 - pg. 25: ln. 3).

[4]    Not only did D&R introduce CS Bankers to Comerica, it joined in the Loan Sale Agreement. 1 CR 399.

[5]    Texas Gulf Fabrication, Inc. should not be confused with Third-Party Defendant Texas Gulf Fabricators, LLC, which is a separate, distinct and unrelated entity.

that they would work towards a further refined, comprehensive agreement which would be entered into in the future and which would contain all the material terms of the marketing joint venture. 2 CR 1079–1090, ¶ 8.

Unfortunately, the parties reached an impasse relative to the additional, material terms and litigation ensued.

On January 4, 2013, TGE on behalf of CS Bankers filed this action and was granted a TRO based on certain appellants, Michael Rushing, Stephanie Rushing, Penn Rushing and Florence Rushings' (collectively the "Rushings"), conversion of property owned by CS Bankers following the foreclosure.[6] 1 CR 3–23.

On February 26, 2013, the Rushings filed "Defendants' Notice of Filing Motion for Removal" removing this matter to federal court. 1 CR 73–74.

On April 19, 2013, the federal court remanded this matter to the trial court. 1 CR 75–79. Upon remand, the Rushings forced TGE and CS Bankers into protracted motion practice relating to defects in the Rushings' pleadings and lack of diligence in service of process on certain third-party defendants.

On December 4, 2013, D&R intervened in this action and, along with the Rushings, filed new claims against TGE, CS Bankers, Tim Connolly

---

[6] The subject parties subsequently entered into an Agreed Temporary Injunction.

("Connolly"), Texas Gulf Fabricators, LLC ("TGF"), Brian Hendry ("Hendry"), Lester Smith ("Smith") and a number of other individuals who were never served in connection with this suit. 1 CR 196–215. The new pleading only served to provide the Rushings and D&R with further excuse for their dilatory tactics. The trial court, however, provided the Rushings and D&R with ample opportunity to complete service, resetting the docket control deadlines and trial three times. The trial court's accommodation only resulted in unnecessary delay and a waste of time and money, as the Rushings and D&R ultimately failed to properly serve four third-party defendants.

On July 16, 2014, TGE and CS Bankers filed their First Amended Petition seeking declaratory relief from the court, pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, on the issue of foreclosure and the Letter of Intent executed by and between TGE and the "Rushing Family." 1 CR 371–377. D&R countered with a competing declaratory action on the issue of foreclosure. Shortly thereafter, in an effort to streamline the litigation, the parties agreed to file cross-motions for summary judgment on the foreclosure issue.[7]

---

[7] At that time, it is undisputed that the Rushings and D&R agreed in writing that they did not need any written or oral discovery from TGE, CS Bankers or Connolly prior to moving on the foreclosure. 2 CR 1907, ¶ 2; 2 CR 1913.

On August 28, 2014, the trial court entered an order granting CS Bankers' motion for summary judgment on the issue of foreclosure (the "Order on Foreclosure"). 1 CR 593. The Order on Foreclosure also dismissed the Rushings and D&R's claims of wrongful foreclosure and quiet title against TGF and Hendry. *See Id.*

On September 16–18, 2014, the appellees deposed Michael Rushing and Penn Rushing for the second time. Based on that testimony, TGF, Hendry, and Smith immediately moved for final summary judgment—both traditional and no-evidence—on the Rushings and D&R's remaining claims. 1 CR 643–718; 1 CR 816–840.

On October 31, 2014, the trial court entered a "Final Summary Judgment" dismissing with prejudice the Rushings and D&R's claims of fraud and conspiracy against Smith. 2 CR 1580.

On November 19, 2014, the trial court entered a "Final Summary Judgment" dismissing with prejudice the Rushings and D&R's claims of fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty, tortious interference, conversion, quantum meruit, and conspiracy against TGF and Hendry. 2 CR 1967.

On December 17, 2014, the trial court signed an order granting TGE's

motion for partial summary judgment on the "Letter of Intent," declaring that the document entitled "Letter of Intent" dated July 11, 2012 is not a binding, valid or enforceable contract and that TGE has no obligation, monetary or otherwise, to the Rushings or D&R. 2 CR 1972.

On January 30, 2015, the trial court held an evidentiary hearing on Smith's motion for sanctions against the Rushings, D&R, and their attorney, George Gore, for repeatedly filing pleadings in bad faith. After the hearing, the trial court assessed sanctions in the amount of $33,250 (the amount of Smith's attorney's fees). 2 CR 2025–2026.

On February 3, 2015, the trial court granted TGE, CS Bankers and Connolly's no-evidence motions for summary judgment, dismissing the Rushings and D&R's remaining claims of fraud, breach of contract, quantum meruit, negligent misrepresentation, breach of fiduciary duty, conversion, conspiracy, and tortious interference with prejudice. 2 CR 2027.

On March 6, 2015, TGE and CS Bankers filed their motion for summary judgment on attorney's fees and motion for entry of final judgment. 2 CR 2696–2872. In response, the Rushings and D&R filed at least *five* motions for new trial and a second motion for summary judgment on the foreclosure—in

an apparent attempt to have the trial court reconsider its prior rulings.[8]  2 CR 2192–2319; 2 CR 2320–2420; 2 CR 2421–2445; 2 CR 2446–2597; 2 CR 2905–3020.

On April 6, 2015, the trial court denied the Rushings and D&R's second motion for summary judgment on the issue of foreclosure.  2 CR 976.

On April 13, 2015, the trial court entered the Final Judgment in this matter, awarding attorney's fees to TGE and CS Bankers.  2 CR 977.

On June 23, 2015, the trial court denied the Rushings and D&R's five motions for new trial and the supplements filed in connection therewith, disposing of this matter in its entirety.  2 CR 1009.

## SUMMARY OF ARGUMENT

CS Bankers was forced to file its suit for declaratory relief because the Rushings and D&R claimed they still owned the subject real property, even though D&R agreed to, and had actual knowledge of, the foreclosure.  Similarly, the Rushings forced TGE's declaratory action by attempting to hold TGE to the "Letter of Intent" even though the Rushings themselves did not agree to many of its terms.  In sum, the Rushings and D&R's groundless

---

[8]  The five motions for new trial and second motion for summary judgment on foreclosure offered nothing new and contained almost 700 pages of regurgitated argument from previous motions and exhibits already on file.  In the process, the Rushings and D&R also attached new objectionable affidavits that could have been presented within their previous briefing.

arguments forced TGE and CS Bankers into this costly matter. Written discovery, depositions, countless motions and hundreds of hours of time were required to disprove the Rushings and D&R's untenable factual and legal positions. Ultimately, TGE, CS Bankers and Connolly (along with the other appellees, Smith, Hendry and TGF) exposed the meritless claims asserted by the Rushings and D&R which were properly dismissed by motion practice.

## STANDARD OF REVIEW

This matter involved both traditional and no-evidence motions for summary judgment. Summary Judgments are reviewed de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court reviews both sides' summary judgment evidence and determines all questions presented. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm if any of the summary judgment grounds are meritorious. *Id.*

A traditional motion for summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant has established a right to summary judgment, it is the non-movant's burden to then respond and present the trial court with any issues that would preclude summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23–24 (Tex. 2000) (per curiam).

A no-evidence summary judgment motion is essentially a pretrial motion for directed verdict. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). By filing a proper no-evidence summary judgment motion, the movant forces the nonmovant to present evidence creating a fact issue as to each element contested in the motion. *Id.*

## ARGUMENT

### *Reply Point 1 in Response to Points of Error 1 and 2: The foreclosure complied with the Texas Property Code and the terms of the operative Deed of Trust.*

The trial court properly granted CS Bankers' motion for summary judgment on the issue of foreclosure. One essential element of a cause of action for wrongful foreclosure is the existence of a defect in the foreclosure sale proceeding. *Charter Nat. Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied). At the time of filing CS Bankers' motion, the only defects claimed by the Rushings and D&R were that (1) there was a failure of posting the foreclosure notice as required, (2) there

was a failure of service of the notice of foreclosure on the Rushings and D&R, and (3) certain appellees conspired to interfere with service of the notice. 1 CR 330–352.

*CS Bankers made the required postings.*

The Texas Property Code requires posting notice of the foreclosure sale at the courthouse door of each county in which the property is located, designating the county in which the property will be sold. Tex. Prop. Code Ann. § 51.002(b)(1). Additionally, the notice of foreclosure sale must be filed in the office of the county clerk of each county in which the property is located. Tex. Prop. Code Ann. § 51.002(b)(2). Both the requirements in § 51.002(b)(1) and (2) must be completed at least twenty-one (21) days before the date of the sale.

In the present case, on August 14, 2012, twenty-one days prior to the foreclosure sale held on September 4, 2012, Robert Schlanger, CS Bankers' foreclosure attorney, posted the Notice of Substitute Trustee's Sale in the designated area of the Harris County Family Law Center, a Harris County Courthouse, located at 1115 Congress Street, Houston, Texas, setting the foreclosure sale of the Property at that same location. 1 CR 439–440; 441–442. On the very same day, August 14, 2012, Schlanger also filed the Notice of Substitute Trustee's Sale in the Harris County Clerk's office at 12:52

p.m., completing the requirements of Tex. Prop. Code Ann. § 51.002(b)(1) and (2) and the Deed of Trust.   1 CR 439–440; 443–444.

*CS Bankers properly served notice on D&R.*

Moreover, the Texas Property Code requires only notice of foreclosure "by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." *Rodarte v. Investco Grp., L.L.C.*, 299 S.W.3d 400, 409 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Tex. Prop. Code Ann. § 51.002.   Additionally, the operative Deed of Trust states that notice must be given to each debtor who, according to the records of the Beneficiary, is obligated to pay the Note.  1 CR 429, ¶ 14(c).  Such notice is to be sent via certified mail and is complete and effective when the notice is deposited in the United States Mail, postage prepaid and addressed to the debtor at the debtor's last known address as shown by the records of the beneficiary.  1 CR 429, ¶ 14(c).

In analyzing a debtor's denial that he received notice of foreclosure, this Court has already held that "[t]he dispositive inquiry under section 51.002, however, is not *receipt* of notice, but, rather, *service* of notice." *See Adebo v. Litton Loan Serv., L.P.,* No. 01-07-00708-CV, 2008 WL 209703, *4 (Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.) (emphasis added).   In *Adebo*, this Court held that in order to create a triable issue of fact, the debtor

must establish that "its notices had not been deposited in the mail, by certified mail, postage prepaid and addressed to [the debtor]" at the debtor's last known address. *Id.* There is no requirement that the debtor actually receive the notice of foreclosure. *See Kainer v. ABMC Corp.*, No. 01-05-00338-CV, 2006 WL 407794, *5 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The purpose of the foreclosure statute is to provide a minimum level of protection for the debtor, and the statute provides this by calling for only constructive notice of the foreclosure. *Id.* Wrongful foreclosure on the basis of failure to provide notice is only shown where the debtor proves that the holder of the debt had in its records the most recent address of the debtor and failed to send the notice of foreclosure sale by registered mail to that address. *See Onwuteaka v. Cohen*, 846 S.W.2d 889, 893 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Thus, a debtor's mere denial of receiving foreclosure notices is insufficient to create a genuine issue of material fact.

It follows, therefore, that the only inquiry needed to be made by the trial court was whether CS Bankers deposited the notice of foreclosure in the mail, by certified mail, postage prepaid and addressed to D&R at its last known address.   It is undisputed that the last known address of D&R was at the Property, 6314 Wade Rd., Baytown, Texas. 1 CR 421; , 439–440; , 445–447; 453; 456: 3–7.  On August 14, 2012, the requisite foreclosure notice was sent

to D&R at the Property by Schlanger. 1 CR 439–440, 445–447. Per the Texas Property Code and the terms of the Deed of Trust, notice was complete and effective when Schlanger deposited the foreclosure notice in the United States Mail on August 14, 2012, twenty-one days prior to the Substitute Trustee's Sale on September 4, 2012. *See* Tex. Prop. Code Ann. § 51.002; *see* 1 CR 439–440.

*The affidavit of Robert Schlanger is prima facie evidence of service.*

Tex. Prop. Code Ann. § 51.002(e) provides that an "affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." The record contains a copy of the Affidavit of Robert Schlanger, the attorney retained by CS Bankers to foreclose on the property, which states, among other, that he deposited the required notice to "D&R in the United States mail, postage prepaid completing service pursuant to Section 51.002(b) and (e) of the Texas Property Code and the terms of the Deed of Trust." 1 CR 440. Schlanger further states in the affidavit, "In connection with the foreclosure of 6314 Wade Rd., Baytown, Texas 77521, all required statutory and contractual notices were provided to the only debtor, D&R Constructors, Inc.," and that he "sold the property located at 6314 Wade Rd. at a Substitute Trustee's Sale held in accordance with the laws of the State of Texas." 1 CR 439–440. Schlanger's affidavit is prima facie evidence that

the notice of foreclosure was sent in compliance with Tex. Prop. Code Ann. § 51.002.

D&R offered no evidence to create a genuine issue of material fact on this point. Summary judgment may not be thwarted by conclusory allegations and unsupported assertions.

Accordingly, D&R's general allegation that the "attachments" were not included in Schlanger's letter entitled "Notice of Posting"[9] is not sufficient evidence to establish the existence of a dispute to a genuine issue of material fact for summary judgment purposes. First, this argument is nothing more than a red herring. The simple basis for D&R's argument is that the Notice of Substitute Trustee's sale is attached as Exhibits B-1 and B-2 of Schlanger's affidavit, while the Notice of Posting letter, which references the Notice of Substitute Trustee's Sale as an enclosure, is a attached at Exhibit B-3. In other words, because Schlanger's affidavit first references the Notice of Substitute Trustee's Sale when it was an enclosure to the later-referenced Notice of Posting, there is a defect in the foreclosure. D&R has failed, however, to explain how the order of exhibits has any bearing on the foreclosure itself.

Schlanger clearly states that he sent the Notice of Posting.  1 CR

---

[9]     The Notice of Posting is the standard "cover letter" that Schlanger has routinely sent in connection with the hundreds of foreclosures he has handled in his twenty years of practice. Enclosed in the Notice of Posting, was the Notice of Substitute Trustee's Sale, setting forth the time and place of the foreclosure.

439–440. The Notice of Posting positively references the enclosed Notice of Substitute Trustee's Sale:

> YOU ARE FURTHER NOTIFIED THAT A NON-JUDICIAL FORECLOSURE SALE HAS BEEN SCHEDULED FOR THE FIRST TUESDAY IN SEPTEMBER, 2012 (SAID DATE BEING SEPTEMBER 4, 2012). THE FORECLOSURE SALES HAVE BEEN SCHEDULED AT THE LOCATION(S) SPECIFIED IN THE NOTICES OF SUBSTITUTE TRUSTEE'S SALES WHICH ARE ENCLOSED. **A COPY OF THE NOTICE OF SUBSTITUTE TRUSTEE'S SALE IS ENCLOSED WHICH DESIGNATES THE TIME AND FURTHER DESCRIBES THE LOCATION OF EACH SALE** [emphasis added].

1 CR 445–446. The Notice of Substitute Trustee's Sale that was delivered as an enclosure to the Notice of Posting clearly states:

> …I will, in accordance with the request of said legal owner and holder, on SEPTEMBER 4, 2012 to commence at the hour of **1:00 o'clock p.m.**, or within three (3) hours thereafter, on said day, sell the above described property to the highest bidder for cash at the following location…

1 CR 441. In sum, the evidence of service on D&R in the record is clear.

Second, D&R takes the position that it never received the certified mail sent by Schlanger. *See, eg*., Brief of Appellants at 15. As such, it is impossible for D&R to offer any evidence contradicting Schlanger's sworn statements or showing that the Notice of Posting did not contain the Notice of Substitute Trustee's Sale as an enclosure. D&R's argument is simply a misrepresentation of the actual evidence in the record.

*D&R offered no credible evidence that anyone wrongfully interfered with service.*

In support of their position that "Texas Gulf Energy personnel working at the Property refused to sign for the letter and falsely advised the postman that D&R no longer was there," the Rushings and D&R globally cite to 1 CR 464–536, which is the entirety of their response to CS Bankers' motion. Within the response, D&R solely directed the trial court to the Affidavit of William P. Rushing and the Domestic Mail Manual of the United States Postal Service to show wrongful interference. 1 CR 470–471. Upon review, both are clearly void of any facts supporting the allegation of wrongful interference.

In addition to D&R presenting no evidence in support of its claim for wrongful interference, it is undisputed that D&R was receiving mail at the Property during the time period when the notice of foreclosure was delivered and that the Rushings, the owners of D&R, were working at the Property. *See, eg*., Brief of Appellants at 15.

Lastly, although not dispositive on the issue of foreclosure, the trial court had evidence before it that D&R received actual notice of the foreclosure via email from CS Bankers. Specifically, almost two weeks prior to the foreclosure, Penn Rushing, President of D&R, was emailed copies of the

Notices by CS Bankers' representative, Craig Crawford. 1 CR 131–132.[10] Penn Rushing acknowledged receipt and stated he would put the notices in D&R's file. 1 CR 131. This evidence impeaches both the Rushings and D&R on the issue of whether they were aware of the foreclosure and calls into serious question the validity of any arguments set forth by the Rushings and D&R. It further disproves D&R's theory of wrongful interference, as it would seem illogical for CS Bankers (or any appellee) to interfere with service by certified mail only to email the notice to D&R at a later date.

*The guarantors were not entitled to notice of the foreclosure.*

The Deed of Trust did not require CS Bankers to serve notice of the foreclosure on the guarantors. Service of the notice only had to be served on the "debtor," D&R. 1 CR 429, ¶ 14(c). Further, Texas courts have interpreted the term "debtor" in the context of a foreclosure to specifically exclude guarantors. *See generally Long v. NCNB-Texas Nat. Bank*, 882 S.W.2d 861, 864–67 (Tex. App.—Corpus Christi 1994, no writ) (discussing construction of § 51.002 of the Texas Property Code and its legislative history). Lastly, the guarantors specifically waived the right to receive notice of any kind, which

---

[10] It appears that the entirety of Exhibit A beginning at 1 CR 132 was not included in the Clerk's Record. As such, CS Bankers respectfully directs this Court to the entirety of the Clerk's Record located at the 270th District Court, Harris County, Texas. Missing from the record is the email thread wherein Penn Rushing acknowledges receipt of the foreclosure notice.

includes any notices relating to the foreclosure.  *See* 1 CR 408; 1 CR 413.

*Schlanger did not exercise any power beyond that afforded to him.*

The Rushings & D&R also argue - without attaching any evidence or authority - that the foreclosure is invalidated because Schlanger performed duties beyond those afforded to a Substitute Trustee, in violation of Sections 51.0074(b)(1) and 51.0075(b) of the Texas Property Code.  Specifically, that Schlanger could not have a "dual role" as debt collector and substitute trustee.  The Rushings & D&R misconstrue the law and the facts.  Nothing prevented Schlanger from sending the Notice of Posting letter to D&R and subsequently serving as the substitute trustee and the person who would conduct the foreclosure sale.

*The loan to D&R was overdue and in default.*

At the outset of their brief, D&R alleges that it owed approximately $435,000 on the Note when CS Bankers entered into the Loan Sale Agreement with Comerica Bank.  Appellant's Brief at 2.  Yet, D&R somehow attempts to set aside the foreclosure by claiming that no amount was due.  Appellant's Brief at 22.  The simple fact is that D&R joined in the Loan Sale Agreement, which included a schedule of the loan and showed an outstanding balance of $415,064.47 in July of 2012.  1 CR 401.  In sum, the loan was nine months overdue and in default.  1 CR 412.  As such, this alleged defect is of no merit.

Further, D&R sets forth yet another baseless argument in that payment on the Note could not be made because D&R did not have CS Bankers' contact information. The Loan Sale Agreement executed by D&R clearly lists the address of CS Bankers. 1 CR 394-395. As such, D&R could have simply looked in the very agreement to which it is a party for CS Bankers' address. Moreover, Schlanger identified himself as a CS Bankers representative in the Notice of Posting letter, and directed D&R to contact him regarding the same. 1 CR 445-447.

### Reply Point 2 in Response to Points of Error 3 and 5: The letter of intent is not an enforceable contract.

The trial court's grant of summary judgment on the "Letter of Intent" ("LOI") was proper because the LOI fails to meet the elements of a binding contract, including: an acceptance in strict compliance with the terms of the offer; a meeting of the minds; each party's consent to the terms and execution and delivery of the contract with the intent that it be mutual and binding. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555–56 (Tex. App—Houston [14th Dist.] 2002, no pet.).

To date, the Rushings have yet to address exactly how they believe the LOI is a binding contract, simply claiming that the "Binding Letter of Intent stands to show the Contract." 2 CR 1721. Nothing could be further from the truth.

*The Rushings did not accept TGE's offer in strict compliance.*

TGE presented the LOI to Michael Rushing in an attempt to have an agreement as to the basic framework for a marketing joint venture between TGE and the Rushings. As set forth in paragraph 8 of the LOI, the parties would agree to a further refined, comprehensive agreement. 2 CR 1080. Based on the deposition testimony of Michael Rushing and Penn Rushing, it is a complete mystery as to why Michael Rushing executed the LOI. To begin, there was not even an agreement as to the purpose of the proposed joint venture. Additionally, the Rushings do not agree with paragraphs 1, 4 or 5 of the LOI, and claim that the LOI was missing a number of material terms.

Paragraph 1, sentence 1 of the LOI states that "Texas Gulf Energy, Inc. and the Rushing Family agree to form a ***Marketing Joint Venture to develop new Fabrication and Manufacturing business*** for Texas Gulf Fabrication, Inc." (emphasis added). 2 CR 1079. Although it was TGE's intent to create a joint venture to market business for the operations being run out of the Fabrication Facility located at the Property (the "Facility"), the Rushings believed the joint venture was the actual business at the Facility and that they were *not* going to be responsible for any marketing. 2 CR 1172

(deposition pg. 129: ln. 24 - pg. 130: ln. 8, pg. 130: ln. 20 - pg. 130: ln. 22[11]); 2 CR 1174 (137:17–138:33); 2 CR 1183 (173:18–173:24).

In other words, although Michael Rushing on behalf of the Rushings executed the LOI, the Rushings did not agree to form a marketing joint venture. Paragraph 4 of the LOI sets forth the proposed number of shares of TGE common stock that would be issued in the name of the marketing joint venture. 2 CR 1079. According to the Rushings, they did not agree with paragraph 4 and claim that portions of the paragraph were "waived." 2 CR 1095 (57:23–58:9); 2 CR 1176 (145:6–145:25).

In regard to Paragraph 5 of the LOI, the Rushings claim that it does not accurately set forth their understanding with TGE. Specifically, that the 2% commission was not going to be limited to the development of new business, and was going to be 2% "on everything that goes through the doors of the shop over there." 2 CR 1095 (58:15–59:7, 59:11–59:20); 2 CR 1176 (146:17–147:6).

In addition to the Rushings' claim that paragraphs 1, 4 and 5 of the LOI were incorrect, they claim that there were many material terms missing from the LOI, including a payoff of an IRS debt of approximately $600,000 on behalf of D&R, employment contracts for the Rushings valued at over

---

[11]     Moving forward, the parenthetical citations represent the page and line for the depositions of Michael Rushing and Penn Rushing.

$600,000 over the course of 3 years, a car allowance, insurance benefits for the Rushings, and a cell phone plan, among others. 2 CR 1094 (55:3–56:4); 2 CR 1174 (139:13–139:20); 2 CR 1179 (159:20–160:11).

Further, the Rushings admit they only signed the LOI as a type of placeholder until the comprehensive agreement containing all the material terms would be agreed to and consummated at a future time, and that they never signed a definitive agreement that embodied the entire agreement of the parties. 2 CR 1098 (69:13–70:3); 2 CR 1174 (138:10–138:25, 140:23–141:1).

*There was never a meeting of the minds.*

Based on the foregoing evidence, it is impossible to find a "meeting of the minds" between TGE and the Rushing Family. Without a meeting of the minds, there cannot be a binding contract. *See Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d at 556.

*The Rushings did not intend on being bound by the LOI.*

The Rushings repeatedly state that the LOI is not the agreement they reached with TGE, and that the real agreement was to be agreed upon at a future time:

Q. It's a real simple question. Yes or no –

A. Okay.

Q. – did your brother sign a document that contained terms that you disagreed with?

A. That I disagreed with, yeah.

Q. Okay. Did your brother sign a document that did not contain certain material terms that you wanted?

A. That had been agreed upon, yes.

Q. Okay. Did you and your brother anticipate or contemplate that the – did you guys expect more documents?

A. Yes, sir.

Q. Okay.

A. There were several meetings.

Q. That were going to be the definitive deal, correct?

A. Yeah. What the lawyers were working on, yeah.

2 CR 1308 (215:2–215:19); 2 CR 1098 (69:13–70:3); 2 CR 1174–1175 (140:23–141:1). As a result, there was never an intent to be bound by the LOI.

*Terms included in the LOI are not sufficiently definite.*

Lastly, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations. *Citrin Holdings, LLC v. Minnis*, No. 14-11-00644-CV, 2013 WL 1928652 (Tex. App.—Houston [14th Dist] May 9, 2013, no pet.).

Notwithstanding the disagreement as to the terms, the LOI is not sufficiently definite to memorialize the parties' obligations. The LOI is silent as to the parties. 2 CR 1079–1080; 2 CR 1094 (53:16–54:1). The LOI clearly

states that TGE is a party, but fails to state which of the "Rushing Family" are a party. 2 CR 1079–1080. Michael, Penn, Stephanie, and Florence Rushing are parties to this suit, but based on the express terms of the LOI, only Michael, as the signatory, has standing to maintain any claims that may arise from the LOI.

Based on the four corners of the LOI, it is impossible to determine if all, none or a combination of the Rushings are parties to the LOI. Additionally, it is possible that the "Rushing Family" contemplated that another one of its family members, who is not named in this suit, could be a party to the LOI. Michael Rushing even stated in his deposition that D&R is a party to the LOI. 2 CR 1093 (51:12–52:1). Without having an agreement as to something so fundamental as the parties, the LOI lacks material terms and is unenforceable.

Moreover, when an agreement is silent as to the work to be done or the services to be rendered, it will be deemed fatally indefinite. *Fiduciary Fin. Servs. of Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 257 (Tex. App.—Dallas 2012, pet. denied). The court in *Fiduciary Fin. Servs. of Sw., Inc.* ruled a letter of intent was unenforceable because it created no specific duties to be performed by a party to the contract for his $250,000 salary. *Id.* In the present case, the LOI is silent as to the specific duties and responsibilities of the "Rushing Family." The LOI does not state what work

the "Rushing Family" will do to be compensated with cash and stock from

TGE. 2 CR 1079–1080. As such, the LOI is unenforceable on its face.

> ***Reply Point 3 in Response to Points of Error 3 and 5: In response to the no-evidence motions for summary judgment, the appellants failed to bring forth credible evidence to support each element of their causes of action.***

An appellant's brief must contain a clear and concise argument for the

contentions made, with appropriate citations to authorities and to the record.

*Coble v. Adams*, No. 01-13-00562-CV, 2014 WL 6602480, *2-3 (Tex.App.

Houston [1st Dist.] 2014). This requirement is not satisfied by conclusory

statements. *Id.* A failure to provide substantive analysis of an issue or cite

appropriate authority waives the complaint. *Id.*

The Rushings and D&R have failed to provide this Court with a clear and

concise argument or substantive analysis with appropriate citations to the

record or authorities. The Rusings and D&R begin their Point of Error of Five

by simply stating there was "evidence creating a fact issue" and directing this

Court to their response to TGE, CS Bankers and Connolly's no-evidence

motions for summary judgment. Brief of Appellants at 25.

The response presented the same issues to the trial court. The trial court

correctly ruled that the Rushings and D&R did not carry their burden. To

determine whether a summary judgment respondent successfully carried its

burden, the trial court is not required to wade through a voluminous record to marshal respondent's proof. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989). When presenting summary-judgment proof, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court. *See Boeker v. Syptak*, 916 S.W.2d 59, 61 (Tex. App.—Houston [1st Dist.] 1996, no writ). Attaching entire documents and depositions to a motion for summary judgment or to a response and referencing them only generally does not relieve the party of pointing out to the trial court where in the documents the issues set forth in the motion or response are raised. *See Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ).

In response to TGE, CS Bankers' and Connolly's no-evidence motions for summary judgment, the Rushings and D&R attached 3 affidavits and 15 exhibits. The repeated generic citations to the affidavits and exhibits simply invited the trial court to "find the fact issue." For example, D&R and the Rushings claim TGE and Connolly "provided Claimants with various deal offers and met with them discussing their Facility." As authority, they cite to "Exhibits E, H, I; Affidavits." 2 CR 1599. The issue is that Exhibits E, H and I total several pages, including correspondence between many parties. 2 CR 1649–1651; 2 CR 1666–1674. Additionally, there are 3 affidavits from 3

different individuals that total 5 single-spaced pages.  2 CR 1726–1730.  This pattern of general, unspecified citations is repeated throughout the response.  This is improper, and failed to raise a fact issue.

*The Rushings do not appropriately identify the individual claimant and liable party for each cause of action.*

Additionally, the Rushings and D&R have an issue relating to the parties.  Throughout their collective responses, each of the appellants – Penn Rushing, Michael Rushing, Stephanie Rushing, Florence Rushing and Intervenor D&R – refer to themselves collectively as "Claimants," and argue that "Claimants" have been wronged by either TGE, CS Bankers and/or Connolly.  The issue is that Rushings and D&R have no evidence to support all of the required elements of their respective causes of action.

For instance, in support of their fraud claim the Rushings and D&R state, "Crawford, Mathews and Connolly, on behalf of themselves as well as TGE and CSB, made direct representations to the Claimants which were either totally false—or so far fetched that he knew that what he was promising was impossible and those promises led to the Claimants losing their Assets which were taken for the benefit of Connolly, CSB and TGE."  2 CR 1599–1560.  The statement, and mostly all of the Rushings and D&R's allegations, left the trial court and the appellees guessing as to who made the alleged misrepresentation and to whom it was made.  Was it Connolly making the

representation to Stephanie Rushing, or was it some other combination of the parties? Additionally, there is no evidence that ***each*** of the Rushings and D&R relied on any representations. There is also no evidence that ***each*** of the Rushings and D&R were injured and "lost Assets," as alleged.

Moreover, the Rushings and D&R claimed in their Response that Tim Connolly is the mastermind negotiating the proposed deal. 2 CR 1595–1560. However, that argument directly contradicts the testimony of Penn Rushing:

> Q. All right. Let's look at the next one. And pay attention to the names. "Craig Crawford, Tim Connolly and David Mathews promised the Rushings and D&R" – D&R – "that Texas Gulf Energy, Inc. and/or Texas Gulf Fabricators, Inc. would purchase the debt and subsequently forgive it as part of their contribution/obligations in their venture – within one year."
> First of all, did Tim Connolly have anything to do with this promise?
>
> A. No. We didn't negotiate with Tim Connolly.
>
> Q. Okay. And this business about subsequently forgiving it, that's not in writing anywhere, right? This is just another discussion point between you and Dave Mathews and Craig Crawford?
>
> A. Okay. Yes, sir.
>
> Q. Is that yes?
>
> A. Yeah.

2 CR 1203 (253:21–254:13).

Because the Rushings and D&R's response fails to specifically identify the liable parties and damaged parties for each of their causes of action, the

response is inadequate. Additionally, since the response contradicts the testimony of Penn Rushing and Michael Rushing, summary judgment should be granted in TGE, CS Bankers and Connolly's favor.

*The Rushings did not provide any evidence of their causes of action.*

Moreover, the Rushings and D&R failed to provide any evidence to support their claims of fraud, negligent misrepresentation, breach of contract, quantum meruit, breach of fiduciary duty, conversion, tortious interference and conspiracy. Without a binding contract or a joint venture between the parties, it is simply impossible for the Rushings and D&R to satisfy the elements of the above-listed causes of action. Specifically, the Rushings and D&R did not ever (a) demonstrate any reliance to satisfy the elements of fraud or negligent misrepresentation, (b) prove the existence of a fiduciary relationship between the parties, or (c) prove any elements of tortious interference against TGE, CS Bankers or Connolly. As a result, the Rushings and D&R's claims of fraud, negligent misrepresentation, breach of fiduciary duty and tortious interference were properly dismissed.

In regard to conversion, to date, the Rushings and D&R have failed to produce evidence of their ownership or right to immediate possession of the alleged converted property. As such, the Rushings and D&R's conversion claim against TGE, CS Bankers and Connolly was properly dismissed.

To recover under quantum meruit, a claimant must render valuable services or furnish materials. *See, e.g., Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). In support of their quantum meruit claim, the Rushings and D&R globally cite to the entirety of their response to the no-evidence motions for summary judgment, which is completely void of any evidence that the Rushings or D&R rendered any services or furnished any materials. *See* Brief of Appellants at 29. Further, they claim that quantum meruit is applicable because D&R lost the Property in foreclosure. *See, eg.*, Brief of Appellants at 30. The trial court correctly ruled, however, that the Rushings and D&R's claim of quantum meruit relating to the Property is not supported by law.[12] Therefore, the Rushings and D&R's claim of quantum meruit against TGE, CS Bankers and Connolly was also properly dismissed.

Lastly, the Rushings and D&R look to the LOI in support of their claim of breach of contract. *See* Brief of Appellants at 27. To prevail on their breach of contract cause of action the Rushings and D&R must show that: (1) there is a valid, enforceable contract; (2) each of the Rushings and D&R are a proper

---

[12]    In support of their claim of quantum meruit, the Rushings and D&R filed their "Note on Quantum Meruit" on November 3, 2014. 2 CR 1581–1587. As TGF and Hendry stated in their November 4, 2014, response to the "Note on Quantum Meruit," the Rushings and D&R failed to cite any cases supporting their claim of quantum meruit. 2 CR 1588–1592. In fact, the cases cited in the "Note on Quantum Meruit" hold precisely the opposite position taken by the Rushings and D&R.

party to sue for breach of contract; (3) the Rushings and D&R performed, tendered performance of, or were excused from performing their contractual obligations; (4) TGE breached the contract; and (5) TGE's breach caused the Rushings and D&R injury. *See Marquis Acquisitions, Inc. v. Steadfast Ins.*, 409 S.W.3d 808, 813 (Tex. App.—Dallas 2013, no pet.).

The LOI is not a valid, enforceable contract. The Rushings and D&R therefore have not, and cannot, provide any evidence of the remaining elements of a breach of contract claim.

With the dismissal of fraud, negligent misrepresentation, breach of fiduciary duty, tortious interference, quantum meruit, conversion and breach of contract, all that would remain is conspiracy. The claim of conspiracy was properly dismissed because it was not supported by an underlying tort.

*The Rushings and D&R never presented credible evidence of damages.*

Additionally, the only damages the Rushings and D&R claim they have suffered is the (1) complete loss of D&R, (2) the subject real property located at Wade Road in Baytown, Texas and (3) and personal property located thereon. First, D&R is still an active corporation registered with the Secretary of State that is owned and operated by certain members of the Rushing Family:

Q. Okay. D&R still exists, correct?

A. Yes, sir.

2 CR 1142 (12:21–12:22)

Q. Okay.  Currently, who are the officers of D&R?

A. Me and my brother, Mike Rushing.

Q. So Mike Rushing is what? Is he a vice?

A. Vice, yes, sir.

Q. Okay. Does your mother retain any interest in D&R?

A. Just my dad's stock.

Q. Okay.  Does - is she the shareholder - the sole shareholder?

A. Yeah.

2 CR 1143 (14:16–14:25).  As such, it is impossible for the Rushings and D&R to claim they have lost their business.

In regard to the real and personal property, the problem is that the Rushings and D&R do not have evidence of a cause of action that entitles them to those damages.  The foreclosure by CS Bankers on the Property was valid and proper.  In regard to their personal property, the Rushings have no evidence that any personal property left at the Property and subject to the operative Deed of Trust was actually owned by them.  As a result, they are not entitled to recover the value of any of that property.

*The Rushings do not have a claim of promissory estoppel or breach of lease.*

The Rushings and D&R claim the summary judgments did not dispose of a purported promissory estoppel claim. They are incorrect for numerous reasons.

First, the Rushings and D&R's supposed promissory estoppel claim was properly dismissed via summary judgment. As a general rule, a motion for summary judgment must stand or fall on the grounds presented in the motion. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). Typically, the trial court may not grant summary judgment as a matter of law on a cause of action not addressed in the summary judgment proceeding. *Chessher v. Sw. Bell. Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983).

There is, however, a significant caveat to that general rule: ***summary judgment is proper where a defendant has conclusively disproven an element central to all causes of action or an unaddressed cause of action derivative of the addressed causes of action***. *Smith v. Heard*, 980 S.W.2d 693, 697–98 (Tex. App.—San Antonio 1998, pet. denied); *see also Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 435–36 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 922–23 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Here, TGE, CS Bankers, and Connolly indisputably moved for—and obtained—summary judgment on the Rushing Defendants' cause of action for

fraud (misrepresentation). To recover on an action for fraud, a party must prove that (1) a material representation was made, (2) the representation was false, (3) when the speaker made the representation, he knew it was false or made it recklessly without knowledge of the truth and as a positive assertion, (4) the speaker made it with the intention that it should be acted upon by the party, (5) the party acted in reliance upon it, and (6) the party thereby suffered injury. *Lundy v. Masson*, 260 S.W.3d 482, 492 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing cases). In their response, the Rushings and D&R failed to provide any evidence of TGE, CS Bankers and/or Connolly's fraud.

Similar to a fraud claim, the requisites of promissory estoppel are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). For either fraud or promissory estoppel, a defendant must make a representation (or promise) to the plaintiff that is relied on to the plaintiff's detriment; they are common elements to both causes of action.

By failing to provide any evidence of fraud in response to TGE, CS Bankers and Connolly's no-evidence motions for summary judgment, the

Rushings and D&R have failed to establish that they have any evidence of promissory estoppel as to those parties.

Second, the alleged promissory estoppel claim is not properly pleaded. A proper pleading must "consist of a statement in plain and concise language of the plaintiff's cause of action . . . ." Tex. R. Civ. P. 45. Rule 45 requires that a petition give fair notice of the plaintiff's claims. The test of fair notice is whether an opposing attorney of reasonable competence, with the pleadings before him, can determine the nature of the controversy and the testimony that would probably be relevant. *City of Houston v. Howard*, 786 S.W.2d 391, 393 (Tex. App.—Houston [14th Dist.] 1990, writ denied). A court must be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty the elements of a cause of action and the relief sought with sufficient particularity upon which a judgment may be based. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979).

Here, the Rushings and D&R's petition fails to adequately set forth the elements of a cause of action for promissory estoppel. 1 CR 641–642. The Rushings and D&R do not allege any promise made by the appellees that they relied on to their detriment. 1 CR 642. Thus, the mere inclusion of the words "promissory estoppel"—under the heading of quantum meruit and in a paragraph discussing quantum meruit—is insufficient to properly allege a

cause of action. *See, e.g., Coffey v. Johnson*, 142 S.W.3d 414, 417 (Tex. App.—Eastland 2004, no pet.).

*These appellees were not a party to a lease with the Rushings or D&R.*

Lastly, it is difficult at this juncture for these appellees to properly respond to the Rushings and D&R's allegation that the trial court "never addressed" the "breach of the lease agreement." The Rushings and D&R have never had a claim for a breach of any lease. *See* 1 CR 624–642. Further, these appellees are unsure as to what lease the Rushings and D&R are referring. Neither TGE, CS Bankers nor Connolly were parties to a lease agreement with either the Rushings or D&R.

### Reply Point 4 in Response to Point of Error 4: The appellants were provided adequate time to conduct discovery and failed to show that additional discovery would be material.

The standard of review for whether there has been an adequate time for discovery is abuse of discretion. *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). To begin, when contending that it has not had an adequate time for discovery, a party must file either an affidavit or verified motion explaining why there is a need for additional discovery. *Triad Home Renovators v. Dickey*, 15 S.W.3d 142, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Neither the Rushings nor D&R made the required filings, and they have therefore failed to preserve this

issue for appeal.

Moreover, throughout the first year of litigation, the Rushings and D&R did not make one request for written or oral discovery from TGE, CS Bankers or Connolly. Further, the Rushings and D&R agreed that they did not need any discovery from any appellee prior to cross-motions for summary judgment on the issue of foreclosure—which was approximately 17 months after litigation began. 2 CR 1913. Finally, 19 months after the commencement of this suit, the Rushings and D&R served 12 sets of written discovery on TGE, CS Bankers and Connolly. 2 CR 954. Due to the trial court's prior rulings, the majority of the requests were irrelevant and appropriate objections were filed, along with a motion for protection.[13] *Id.* Further, contrary to their assertions, responsive documents were produced to the Rushings and D&R. *Id.*

***Reply Point 5 in Response to Point of Error 7. An award of attorney's fees by a trial judge in a declaratory judgment action following summary judgment is proper.***

In their final point of error (without a single citation to either the clerk's or reporter's record), the Rushings and D&R make two sweeping generalizations: 1) that a "jury trial" is always required to determine attorney's fees—even in the absence of a fact issue; and 2) that there was no segregation of attorney fees in this case. The Rushings and D&R misconstrue case law and

---

[13]    It should be undisputed that at this juncture the trial court specifically instructed the parties that it would take up the pending motions for summary judgment first and then determine what discovery would be appropriate.

fail to mention that their counsel never filed a controverting affidavit to the reasonableness of attorney's fees even though he had the opportunity to do so—*twice*.

*There is no fact issue for any fact finder*.

On February 6, 2015, pursuant to Tex. Civ. Prac. & Rem. Code § 18.001,[14] counsel for TGE and CS Bankers—Adam Tepper—served the Rushings and D&R with an affidavit stating that the amount of $422,022.92 charged by the law firm of Christian, Smith & Jewell, LLP to TGE and CS Bankers in prosecution and defense of the claims in this matter was reasonable and necessary. 2 CR 2706–2872.

The Rushings and D&R failed to meet the requirements of C.P.R.C. § 18.001 and file a counter-affidavit within thirty (30) days controverting the claims reflected in Mr. Tepper's affidavit. *Figueroa v. Davis*, 318 S.W.3d 53, 61 (Tex. App.—Houston[1st Dist.] 2010, no pet.) (holding that a party which fails to file a counter-affidavit pursuant to § 18.001 shall be barred from offering evidence challenging the reasonableness and necessity of the offering party's attorney's fees.) Since the Rushings and D&R failed to file a

---

[14] "Unless a controverting affidavit is filed, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." Tex. Civ. Prac. & Rem. Code § 18.001.

controverting affidavit, Mr. Tepper's affidavit was sufficient evidence that the fees referenced were reasonable and necessary. *Id.*

On March 6, 2015, TGE and CS Bankers attached as Exhibit A to their Motion for Summary Judgment on Attorney's Fees the affidavit of their attorney, Gary M. Jewell. 2 CR 2701–2705. Mr. Jewell's affidavit offers evidence of his qualifications and the reasonable and necessary nature of both TGE and CS Bankers' respective, and segregated, claims for attorney's fees under the factors identified in the Texas Supreme Court decision of *Arthur Andersen & Co. v. Perry Equip. Corp.*[15] and the Texas Disciplinary Rule of Professional Conduct 1.04. *Id.*

Yet again, the Rushings and D&R failed to offer any evidence to create a fact issue on the reasonable and necessary nature of the fees sought by TGE and CS Bankers. An attorney's affidavit in support of reasonable attorney's fees is expert opinion testimony. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1991, writ denied). An affidavit filed by a summary judgment movant's attorney that "sets forth [her] qualifications, [her] opinion regarding reasonable attorney's fees, and the basis for [her] opinion will be sufficient to support summary judgment, if *uncontroverted.*" *Gaughan v. Nat'l Cutting Horse Ass'n*, 351

---

[15]     945 S.W.2d 812, 819 (Tex. 1997).

S.W.3d 408, 422 (Tex. App.—Fort Worth 2011, pet. denied) (*quoting*

*Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex.

App.—Texarkana 2009, pet. denied)).[16]

This Court has repeatedly rejected saving counsel from their own

conduct under very similar situations before. *Petrello v. Prucka*, 415 S.W.3d

420, 424 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Elder v. Bro*,

809 S.W.2d 799, 801 (Tex. 1991).

The Rushings and D&R's briefing on the issue of attorney's fees shows

a further disregard for the rules of this Court as they authoritatively cite case

law for propositions which are clearly inapposite. The Rushings and D&R

state in their brief that "no attorney's fees should be granted without a trial"

because attorney's fees are a fact issue; and they cite for authority the cases of:

*Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998), and *Fuqua v. Oncor Elec.*

*Delivery Co.*, 315 S.W.3d 552 (Tex. App.—Eastland 2010, pet. denied).

Appellants' Brief, 40. As decided by this Court just two years ago—and as

---

[16]    In *Garcia v. Gomez*, the supreme court took a broad view of the level of specificity
required by an attorney testifying on the reasonableness of his fees. *Garcia v.
Gomez*, 319 S.W.3d 638, 641 (Tex. 2010). The supreme court held that "[w]hile the
attorney's testimony lacked specifics, it was not, under these circumstances, merely
conclusory. It was some evidence of what a reasonable attorney's fee might be in this
case." *Id.* at 641. Significantly, the court noted that the nonmovant "had the means
and opportunity to contest the attorney's testimony on what a reasonable
attorney['s] fee would be in [the] case, but failed to do so."*Id.* at 642. The court
therefore determined that the nonmovant conceded the reasonableness of the fees
as a matter of law. *Id.*

would have been revealed to the Rushings and D&R had they done a simple search of the case history—**this is simply not true**.  In fact, when presented with a case with almost the exact factual scenario, this Court dismissed the exact same argument by writing the following:

> In this case, the defendants included a prayer for attorney's fees in their summary-judgment motion, and they submitted affidavits supporting the award. Petrello did not file a counter-affidavit challenging these fees as unreasonable. Instead, he argues that the issue of the reasonableness and necessity of Declaratory Judgment Act attorney's fees must be submitted to the jury, relying upon *Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998), and *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552 (Tex. app.—Eastland 2010, pet. denied) . Petrello's cases do not stand for the proposition he advances. While attorney's fees are an issue for the jury in cases in which the jury is the factfinder, *Bocquet*, 972 S.W.2d at 21, an affidavit can establish the reasonableness of attorney's fees for summary judgment purposes. *Gaughan*, 351 S.W.3d at 423. When no controverting affidavit is filed, mere criticism of the amount of attorney's fees sought does not create a fact issue and the trial court may grant summary judgment on the amount of attorney's fees.

*Petrello*, 415 S.W.3d at 431-32.

An award of attorney's fees may be appropriate in a summary judgment proceeding.  *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 512 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Further, the Declaratory Judgment Act provides that "***the court*** may award costs and reasonable and

necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009 (emphasis added). In fact, the trial court is given broad discretion in awarding attorney's fees in a declaratory judgment action. *Intertex, Inc. v. Cowden*, 728 S.W.2d 813, 819 (Tex.App.—Houston [1st District] 1986, no writ.). The grant of attorney's fees in such an action will not be reversed absent a clear showing that the trial court abused its discretion. *Oake v. Collin Co.*, 692 S.W.2d 454, 455 (Tex. 1985).

In *Petrello,* this Court recognized the common sense rule that on summary judgment, if the opposing party does not contest the issue, than they cannot later complain about it. *Petrello*, 415 S.W.3d at 431. The Rushings and D&R's summary judgment proof was nothing more than "mere criticism of the amount" without any expert testimony to support. Appellees proved up their attorney's fees affirmatively *twice* by affidavit and Appellants had the opportunity to object—the Rushings and D&R cannot not now ask this Court to save them from their self-inflicted wounds at the trial court.

*TGE and CS Bankers segregated their attorney's fees.*

The Rushings and D&R have also pushed forth the contention that the affidavits are insufficient as a matter of law because they do not properly segregate fees.

As an initial matter, TGE and CS Bankers would contend that by never

filing a controverting affidavit, the Rushings and D&R waived any right to complain about the substance of the affidavits—including whether or not attorney's fees were necessary to a particular claim which allowed for them or whether they were only necessary to a cause of action which did not. As stated before, an affidavit filed by a summary judgment movant's attorney that "sets forth [her] qualifications, [her] opinion regarding reasonable attorney's fees, and the basis for [her] opinion will be sufficient to support summary judgment, if *uncontroverted.*" *Gaughan*, 351 S.W.3d at 422. Further, in a Declaratory Judgment Action "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009.

Further, TGE and CS Bankers established at the trial court that the fees were segregated to the extent mandated by law. Segregation of fees is only necessary if: 1) the plaintiff pursues any claims for which attorney's fees are not recoverable; and 2) those fees are separable from the work provided for which attorney's fees are allowed. *A.G. Edwards & Sons, Inc. v. Breyer*, 235 S.W.3d 704, 710 (Tex. 2007). The need to segregate fees is a question of law. *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 312 (Tex. 2006). If the Court determines that fees were in fact separable, than the party asking for attorney's fees must distinguish between attorney's fees from those causes of

action which allow recovery from those which don't. *Id.*

First, the Rushings and D&R's argument that "there is no division of claims" is not true. TGE and CS Bankers met the segregation requirements, as evidenced by paragraphs 11–13 of the Affidavit of Gary M. Jewell. 2 CR 2703–2704. As such, the attorney's fees affidavit of Mr. Jewell established the reasonableness, necessity, and the recoverability (as a matter of law) of the attorneys fees in this case and should not be overturned.

Second, the law does not require segregation to the extent that the Rushings and D&R contend that it does so in the present case. Both TGE and CS Bankers sought declaratory relief from each and every one of the Rushings and D&R. In response, the Rushings and D&R globally answered the suits for declaratory relief and made the exact same allegations in their defense. In sum, the prosecution of the declaratory actions and the Rushings and D&R's defense of the same, was so inexplicably intertwined that segregation as to each Rushing Defendant is both impossible and not required. The Rushings and D&R are not correct in their contention that Appellees must segregate the work done against every individual defendant when all defendants were asserting the same interest in the land and contract and when such separation is practically impossible.

Therefore, in light of all the preceding, Appellants' Point of Error

Number Seven should be denied because equity demands that TGE and CS Bankers be awarded their reasonable and necessary attorney's fees in light of Appellants' clear waiver.

# RELIEF REQUESTED

For the reasons state above, Texas Gulf Energy, Inc., CS Bankers V, LLC and Timothy J. Connolly respectfully request that this Court affirm the trial court's judgment.

Respectfully submitted,

**CHRISTIAN, SMITH & JEWELL, LLP**
By: *//s// Gary M. Jewell*
GARY M. JEWELL
State Bar No. 10664800
*gjewell@csj-law.com*
ADAM L. TEPPER
State Bar No. 24079445
*atepper@csj-law.com*
2302 Fannin, Suite 500
Houston, Texas 77002
Telephone: (713) 659-7617
Facsimile: (713) 659-7641

**ATTORNEYS FOR APPELLEES**
**TEXAS GULF ENERGY, INC.,**
**CS BANKERS V, LLC AND**
**TIMOTHY CONNOLLY**

## CERTIFICATE OF SERVICE

Pursuant to the Texas Rules of Civil Procedure, I hereby certify that on this 4th day of November, 2015, a true and correct copy of the above and foregoing document has been duly served upon all attorneys of record *via e-Service* as follows:

George W. Gore
6200 Savoy, Suite 1150
Houston, Texas 77036
Telephone: (713) 224-2000
Facsimile: (713) 224-2004

**ATTORNEY FOR APPELLANTS**

Cody W. Stafford
Paul J. Dobrowski
DOBROWSKI, LARKIN & JOHNSON, LLP
4601 Washington Avenue, Suite 300
Houston, Texas 77002
Telephone: (713) 659-2900
Facsimile: (713) 659-2908

**ATTORNEYS FOR APPELLEES**

LESTER H. SMITH, BRIAN HENDRY AND TEXAS GULF FABRICATORS, LLC

By: *//s// Gary M. Jewell*
GARY M. JEWELL
ADAM L. TEPPER

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), I hereby certify that Appellees' Brief contains less than 15,000 words (counting every word and every part of the document *without exception*). Specifically, this brief was prepared using WordPerfect and according to its word-count function, this document contains 12,467 words. Further, the typeface used in this brief is no smaller than 14-point, except for footnotes, which are no smaller than 12-point.

By: *//s// Gary M. Jewell*
GARY M. JEWELL
ADAM L. TEPPER